AGNES JACQUITH, APPELLEE, v. EDGAR H. MASON, ADMINISTRATOR, ET AL., APPELLANTS.

FILED MARCH 4, 1916. No. 18469.

1. **Corporations: OFFICERS: TRUST RELATION.** The president of a corporation, who is also a director and stockholder, is not only the agent of the corporation, but is also in many respects a trustee for the stockholders as such.

2. ———: ———: LIABILITY. It is the duty of such president and manager of the corporation, who learns that the entire stock of the corporation can be sold at a certain favorable price, and disposes of his own stock accordingly, to inform other stockholders, who he knows are anxious to dispose of their stock, and if he fails to do so, but purchases their stock at a less price and immediately sells it at a profit, he will be liable to such stockholder for the profit so realized.

3. ———: ———: ———. In such case one who, with knowledge of all the conditions, joins with such president in purchasing the stock and realizing profit thereon will be also liable.

4. Evidence indicated in the opinion is found sufficient to support the findings and judgment.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Duncan M. Vinsonhaler* and *Gurley, Woodrough & Fitch,* for appellants.

*McGilton, Gaines & Smith, contra.*

SEDGWICK, J.

Some time prior to October, 1909, this plaintiff, being the owner of 201 shares of the face value of $100 each of the capital stock of the Underwriters Insurance Company, placed the same in the hands of Burns, a stock broker, for sale. Afterwards Burns sold the stock for $75 a share. Soon afterwards, the stock was sold to one Montgomery for $110 a share. Plaintiff began this action in the district court for Douglas county against William C. Sunderland and Sherman Saunders, alleging that Sunderland was a stockholder, director and president of the Nebraska Underwriters Insurance Company, and that he, acting through and joining with Saunders, fraudulently purchased the plaintiff's stock for $75 a share to enable them to transfer the whole capital stock to Montgomery at $110 a share. She asked for a judgment against the defendants for the difference between $75 and $110 a share. Sunderland answered that the facts in the petition failed to state a cause of action against him, coupled

with a general denial of all the allegations in the petition. Saunders denied generally all of the allegations of the petition. While the action was pending, both Saunders and Sunderland died, and Maria B. Sunderland, executrix, was substituted for the defendant Sunderland, and Edgar H. Mason, as administrator, was substituted for the defendant Saunders. The trial in the district court resulted in a verdict and judgment in favor of the plaintiff for the amount asked for, $7,035 and interest, amounting to $8,020.13.

The defendants contend that the evidence is not sufficient to support the verdict; that the verdict and judgment are contrary to law, and that the court erred in certain instructions given to the jury.

The briefs are not a compliance with rule 12 (94 Neb. XI). The parties do not agree as to the evidence, and, in making their respective statements as to the substance of the evidence, they do not always refer "with particularity by question and page to the evidence in the record supporting the contention made." The latter part of the rule, relating to the statement of the propositions of law relied upon and the authorities supporting them, is not carefully observed.

Sunderland and Saunders were partners, carrying on a business distinct from that of the insurance company. The plaintiff's husband was recently deceased, and in his lifetime he had been the owner of this stock and somewhat interested in the affairs of the company, and for several years no dividend had been paid to the plaintiff on her stock. This was all the information that the plaintiff had in regard to the probable value of the stock, and because she was receiving no dividends thereon she thought it was necessary to sell the stock. She authorized the broker to sell it at $75 a share. She testified that some time before the transaction complained of she had conversation with the president, Sunderland, in regard to the dividends, but was given no information in regard to the condition of the company nor the probable value of the

stock. Mr. Montgomery had some stock in the company, and, together with his partner, Funkhauser, was largely interested in a rival company. It would appear that from the evidence the jury might have found that the defendant Sunderland on the 8th of October, 1909, went to the office of Montgomery and Funkhauser, in Chicago, with a view to negotiation as to the capital stock of the insurance company, and learned that Montgomery would purchase the entire stock of the Underwriters Insurance Company and pay $110 a share therefor, and that thereupon Sunderland contracted his stock at that price. It was not inconsistent with the evidence that he gave Montgomery to understand that the remainder of the stock could also be purchased at that price, and that it was because of that understanding that he was able to sell his own stock. A few days later, after Mr. Sunderland's return, Mr. Love, who was an acquaintance of Sunderland and Saunders and had some stock in the insurance company, contracted with the broker Burns for the plaintiff's stock at $75 a share. The plaintiff thereupon signed a blank assignment of the stock and delivered it to Mr. Love, and the stock was afterwards found to be assigned to Mr. Saunders and to be on deposit in the United States National Bank of Omaha, as collateral security for the sum of $15,000, about the amount that was paid for the plaintiff's stock. Afterwards Mr. Saunders, within a few days, sold the stock to Montgomery.

The defendants contend that the evidence will not warrant the finding that Sunderland and Saunders were interested in the purchase of plaintiff's stock. Mr. Love testified that he was himself trying to get a controlling interest in the company, and evidently desired the jury to believe that he bought plaintiff's stock with that in view, and that when he found he could not succeed in getting a controlling interest in the company he sold a one-half interest in the stock to Mr. Saunders for the price that he had paid plaintiff. He testified that he sold a half interest in the stock to Saunders, and said that he would have

been "stuck" if "they" had not bought the stock from him, indicating that some third party was interested in the deal. Mr. Saunders' testimony is inconsistent with the idea that Love alone bought the stock for his personal interest. Saunders testified: "Q. That is, before the 14th of October, you and Mr. Love were entering into negotiations for the purchase of the stock of the Nebraska Underwriters Insurance Company? A. Yes, sir. Q. You were acting together in the matter? A. Yes, sir. Q. And this stock was purchased from Mrs. Jacquith, in which you and Mr. Love were together in that transaction? A. Yes, sir. Q. And while you didn't furnish, at the time, one-half of the money, you became obligated, and furnished your half of it? A. Yes, sir." There is direct evidence that Mr. Sunderland stated that himself and Love and Saunders had planned together to buy the whole stock of the company, and there are many circumstances in the evidence indicating that when Sunderland learned that the entire stock could be sold to Montgomery for $110 a share he communicated this fact to his business partner, Saunders, and they through Mr. Love procured the plaintiff's stock with the purpose of selling it to Montgomery with Sunderland's own stock. The books of Sunderland and Saunders show that Sunderland participated in the profits that were realized on the plaintiff's stock.

It is insisted: "The defendant Sunderland might have lawfully purchased the plaintiff's stock himself or through an agent or in any other manner, regardless of his information at the time of purchase, so long as he was not guilty of actively misleading her in respect thereto." This court in *Barber v. Martin*, 67 Neb. 445, stated the following as a general proposition of law: "The general manager of a corporation, in effectuating a sale of the entire capital stock of his company, acts as the agent of all the stockholders, and he cannot receive and retain a secret compensation from the vendee for effectuating the con-

tract of sale." This is a little stronger than was neces-
sary under the facts in that case. It appears that the trial
court had instructed the jury: "You are instructed that
the sole questions for you to determine in this case from
the evidence are: (1) Did the defendant Barber in sell-
ing said 18 shares of stock which originally belonged to
the plaintiff act as her agent and representative? If he
did not, you need not consider the case any further, but
return a verdict for defendant." If this instruction was
not strictly accurate in view of the facts developed in that
case, the error, if any, was prejudicial to the plaintiff, and
not to the defendant, and so it may justly be said that,
so far as the consideration of that case is concerned, the
instruction was not erroneous, requiring a reversal.

The supreme court of Kansas has had occasion to dis-
cuss quite at large a similar question, and declares the
law to be: "The managing officers of a corporation are
trustees not only in relation to the corporate entity and
the corporate property, but they are also, to some extent
and in many respects, trustees for the corporate share-
holders. * * * The fact that the directors and manag-
ing officers of a corporation are quasi-trustees for the
stockholders does not prohibit them from dealing with the
latter. The only restriction is that in such dealing their
conduct be fair, open, and above reproach. Because of
the trust relation and the better opportunity afforded for
acquiring information, before any director or managing
officer of a corporation, having a knowledge of the condi-
tion of its affairs, can rightfully purchase the stock of
one not actively engaged in the management, he must in-
form such stockholder of the true condition of affairs."
*Stewart v. Harris,* 69 Kan. 498. As applied to the facts
in that case, the court approved of the following language
in the instructions of the trial court: "You are instructed
that the president, or other managing officer of a corpora-
tion doing business as a bank, stands in relation of a
trustee to all the stockholders who are not themselves
engaged in the entire management of the bank, and. be-

fore any managing officer of a bank who is acquainted with its condition and affairs can rightfully purchase the stock of such bank from stockholders who are not actively engaged in the management and operation of the bank, such managing officers must inform such stockholders of the true condition of the bank and its affairs and assets, and must give to such stockholders all the information affecting the value of the stock which such managing officer himself possesses." In the opinion the court referred to the case of *Board of Commissioners of Tippecanoe County v. Reynolds,* 44 Ind. 509, 15 Am. Rep. 245, as the leading authority holding a contrary view. The fact that that decision was rendered by a divided court was mentioned, and it was then said: "The rule laid down has met with much criticism. The position taken leaves the stockholders' interest in the corporation and all matters affecting its value wholly in the charge and keeping of the managing officers of the corporation, and leaves the stockholders their legitimate prey. We cannot give the sanction of our approval to the views they expressed."

Other courts have refused to state the rule as strongly for the plaintiff as this. The supreme court of Georgia considered a case in one respect more nearly identical with the case at bar. That court declared the rule to be: "Where a director purchases shares from a stockholder at 110, concealing the fact that there is a contemplated sale of the entire plant of the company, which makes the stock worth 185, the concealment of such material fact entitles the shareholder to rescind the sale, or to other appropriate relief." *Oliver v. Oliver,* 118 Ga. 362. Mr. Justice Lamar in the opinion of the court discusses very clearly the relation which a director bears to any regular stockholder: "But the fact that he is trustee for all is not to be perverted into holding that he is under no obligation to each; the fact that he must serve the company does not warrant him in becoming the active and successful opponent of an individual stockholder with reference to the latter's undivided interest in the very property committed to the direc-

tor's care. * * * No process of reasoning and no amount of argument can destroy the fact that the director is, in a most important and legitimate sense, trustee for the stockholder. *Jackson v. Ludeling*, 21 Wall. (U. S.) 616; 2 Pomeroy, Equity Jurisprudence (2d ed.) sec. 1090. Not a strict trustee, since he does not hold title to the shares; not even a strict trustee who is practically prohibited from dealing with his *cestui que trust;* but a quasi-trustee as to the shareholder's interest in the shares. * * * If, however, the fact within the knowledge of the director is of a character calculated to affect the selling price, and can, without detriment to the interest of the company, be imparted to the shareholder, the director, before he buys, is bound to make a full disclosure. In a certain sense the information is a quasi-asset of the company, and the shareholder is as much entitled to the advantage of that sort of an asset as to any other regularly entered on the list of the company's holdings."

If the jury in the case at bar believed that the president and manager of the corporation had found an opportunity to dispose of all the stock of the corporation at a price beyond its supposed value, and had disposed of his stock at that price, knowing that the purchaser expected to take all of the remaining stock, and through his partner and a third person procured the stock of the plaintiff at a much less price with the purpose and intention of disposing of the same as he had already disposed of his own, knowing at the time that the stockholder from whom he so purchased was not familiar with public transactions, was wholly unacquainted with the condition of the corporation, the value of the stock or the opportunity to sell the same, the jury would be justified in finding a verdict for the plaintiff.

The objection that the stock was not really worth more than the plaintiff obtained for it does not appear to have any merit. The condition was the same as though the president had ascertained that the property of the company could be sold at such a price as to make the value

of the stock at $110 a share. The defendant knew that the stock could be sold for that amount, and apparently it was upon the understanding that all of the stock would be so sold that the defendant was enabled to make so advantageous a sale of his own stock.

There is perhaps a slight variance between the allegations of the petition as amended and the proof, but this slight variance is not made a subject of discussion in the briefs, and under the circumstances the case should be determined upon the evidence as submitted to the jury. The instructions of the court to the jury are severely criticised. It may be said that these instructions do not as clearly present the case to the jury under the evidence as might be desired; but, so far as we have observed, any defect in the instructions in that regard would not result in prejudice to the defendant, but rather to the plaintiff herself. The instructions given by the court are quite lengthy and somewhat involved, and the proper limits of this opinion will not admit of a detailed discussion of them. It does not appear from the record that the defendants offered proper instructions setting forth their theory of the case.

We have found no error in the record that requires reversal, and the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.