ARTHUR W. DUFFY ET AL., APPELLANTS, V. OMAHA MERCHANTS EXPRESS & TRANSFER COMPANY ET AL., APPELLEES.

FILED JUNE 1, 1934. No. 28745.

*Hotz & Hotz,* for appellants.

*Finlayson, Burke & McKie, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

HASTINGS, District Judge.

The plaintiffs are minority stockholders in the defendant corporation, the Omaha Merchants Express & Transfer Company, and the defendants, George W. Johnson, Harry B. Baker and Bertha M. Condit, are the majority stockholders and managing officers of said corporation. The action is brought in equity for the benefit of the corporation, to compel said majority stockholders and officers to return to the defendant corporation money which it is alleged they had unlawfully taken from it, to cancel notes taken by them for the sale of their personal stock to the corporation, through themselves, to reduce excessive salaries, for an accounting, and to restore profits illegally made by the defendants in their personal dealings with the corporation, and for general equitable relief, including the appointment of a receiver. The answer is a general denial. An application for the appointment of a receiver before the trial of the case on its merits was denied. At the close of plaintiffs' evidence the trial court, on motion of defendants, entered judgment of dismissal for want of equity, from which plaintiffs appeal. The defendant corporation is solvent and the rights of creditors are not involved. The case is here for trial *de novo*.

The corporation at the time of the commencement of this action had an authorized capital stock of $107,000 divided into 214 shares of the par value of $500 a share, of which 162.26 shares were outstanding. The articles and by-laws of the corporation show the general nature of its business to be the transportation of goods, wares and merchandise, express and freight in and about the city of Omaha.

Of the capital stock of the corporation, the plaintiff Duffy, at the time of the commencement of this action, owned 31 and a fraction shares, the plaintiffs Elwood,

who are brother and sister and reside in the state of Iowa, owned jointly 33 shares of stock, which they had inherited from their father. The defendants, George W. Johnson, Harry B. Baker and Bertha M. Condit, each owned 31 and a fraction shares, and Lester P. Woodruff, who is not a party to the action, owned four shares.

The specific matters complained of and upon which counsel for plaintiffs claim plaintiffs are entitled to equitable relief are limited to four transactions, which will be considered in the order in which they are discussed in plaintiffs' brief.

The first transaction complained of relates to the sale by the defendants, Johnson, Condit and Baker, of 40 shares of stock owned by them of the defendant corporation, to the corporation, for the sum of $15,000. The facts disclosed by the evidence in reference to this transaction are that said defendants were indebted to the State Bank of Omaha in the sum of $8,804.28, to secure which they had pledged 40 shares of stock jointly owned by them. The bank went into the hands of a receiver. At the time the bank failed defendant corporation had $11,811.37 on deposit in said bank. It owed the bank $5,000, evidenced by its promissory note. The amount of the note was set off against the deposit and on December 18, 1931, a receiver's certificate was issued to the defendant corporation for the balance, in the amount of $6,811.37. During the summer of 1932 the defendants, Johnson, Baker and Condit, entered into negotiations with the receiver of the State Bank to compromise and settle their individual indebtedness to the bank. On July 27, 1932, the three defendants withdrew from the checking account of the corporation in the Omaha National Bank the sum of $7,500 and placed it in a safety deposit box in the First National Bank, to which they alone had access. On August 8, 1932, $3,500 was taken from the safety deposit box by said defendants and deposited and credited to the checking account of the defendant Johnson in the Omaha National Bank, and on the same day a certified check for

$3,500 was drawn on said account by Johnson, payable to the receiver of the State Bank of Omaha. On the 14th day of October, 1932, an order was entered by the district court for Douglas county approving the compromise and settlement of their indebtedness to the bank. By said compromise they were to pay the receiver $3,500 and surrender for cancelation the receiver's certificate of indebtedness issued to the defendant corporation. At that time there had been paid on the certificate two dividends, one for 40 per cent. and one for 10 per cent., leaving a balance on said certificate of $3,405.68. To effect the compromise said defendants gave the receiver the certified check issued by Johnson and turned over to him the receiver's certificate in full payment of their individual obligation to the bank. The defendants sold to the corporation on December 14, 1932, for $15,000, the 40 shares of stock owned by them, which had been pledged as security for their indebtedness at the bank, and on the purchase price gave the corporation credit for the $3,500 which they had appropriated and the full amount of the balance on said certificate of $3,405.68, leaving a balance owing them by the corporation of $8,094.32. This was settled by the defendant corporation paying to said defendants the sum of $2,094.32, and giving to each of the defendants Condit and Baker a note for $2,000 and the defendant Johnson, being indebted to the corporation in the sum of $1,500, this was deducted from the amount coming to him and he was given a note of the corporation for the balance. The stock sold to the corporation had a book value of about 80 cents on the dollar, but no market value.

At the time the transaction complained of took place the defendant stockholders comprised a majority of the board of directors of said corporation and were the officers in sole charge and management of its affairs. The plaintiffs had no part in the transaction, nor did they have any knowledge of it until a short time before the commencement of this action.

The directors of a corporation are the trustees of the corporate property for the corporation and the stockholders, and as such are charged with the highest degree of responsibility in dealing with the corporation in their own behalf. The accountability of the defendants, as managing officers and directors, is to be determined by the strict standards of rectitude that bind a fiduciary. *Howell v. Poff,* 122 Neb. 793; *Bodie v. Robertson,* 113 Neb. 408; *Jacquith v. Mason,* 99 Neb. 509; *Nebraska Power Co. v. Koenig,* 93 Neb. 68; *Barber v. Martin,* 67 Neb. 445.

The defendants, as officers of the corporation, had no lawful right or authority to take the property of the corporation to settle their own private indebtedness. In doing so they betrayed the trust imposed upon them as officers and directors. In the instant case all the directors, except one, and the managing officers of the corporation, were interested in the transaction. In the sale of the stock the defendant stockholders, acting for themselves, fixed the price they were to be paid for the stock and the terms of payment, then, as directors and managing officers of the corporation, approved and consummated the sale. The sale under such circumstances is, at least, voidable.

In 4 Fletcher, Cyclopedia Corporations, 3588, sec. 2339, it is said: "One of the reasons for holding this class of transactions to be voidable is that a person cannot, as a director or other officer of a corporation, enter into a valid contract on behalf of the corporation with himself in his individual capacity, or be both vendor and purchaser, since two persons are a necessary element in the formation of a contract. The fact that he acts as an officer of the corporation on one side, and for himself on the other, can make no difference." See, also, 3 Clark & Marshall, Private Corporations, 2296, sec. 759; 14-A C. J. 92.

"No principle in the law of corporations, therefore, is founded on sounder reasons, or more surely settled, than

the principle that the directors, trustees or other officers of a corporation, who are entrusted with its interests, and who occupy a fiduciary relation towards it, will not be allowed to contract with the corporation, directly or indirectly, or to sell property to it, or purchase property from it, where they act both for the corporation and for themselves. In such a case, the transaction is, at least, voidable, at the option of the corporation, and it may be avoided and set aside, or affirmed and any profits recovered, without proof of actual fraud, or of actual injury to the corporation. Generally, this rule is applied in case of directors but it is equally applicable to other officers." 4 Fletcher, Cyclopedia Corporations, 3589, sec. 2340.

At the time of the sale of the stock to the corporation it had approximately $8,700 of cash on hand and was not in debt. The effect of the sale of the stock was to absorb the greater part of its cash and to leave it indebted to the defendant stockholders in the sum of $4,500. Owing to the financial depression then existing and the credit stringency, the money in its treasury was needed to successfully carry on and conduct its business, and was essential to the enjoyment and realization of the full value of its other property. The effect of the transaction was to postpone payment of dividends and to impair the value of the remainder of the property. The evidence is convincing that the transaction complained of was injurious and prejudicial to the corporation and the minority stockholders. It is manifest that the entire transaction was conceived and manipulated by the defendant stockholders, as the sole officers of the corporation, for their own benefit. They sought profit at the expense of other nonparticipating stockholders, and in so doing were unfaithful to the relation they had assumed, and were guilty, at least, of constructive fraud. The sale of the stock to the corporation cannot be upheld as a valid sale, and should have been set aside by the trial court and the parties restored to their former position as nearly as possible.

The defendant corporation is entitled to have judgment entered by the district court against the defendant stockholders for the sum of $3,500, with interest from August 8, 1932; for the value of the receiver's certificate of indebtedness appropriated and used by them, with interest thereon from the 14th day of October, 1932; for $2,094.32 in cash taken by the defendants on December 14, 1932, with interest from that date; for the cancelation of the $4,500 in notes given by the corporation, if the same are owned by defendants, if not, that judgment be rendered against them for said sum, and also for the $1,500 used in payment of the amount of the indebtedness owed by the defendant Johnson to the corporation, with interest thereon from December 14, 1932. Said decree should provide that the corporation have a lien upon the 40 shares of stock sold to the corporation for the amount found due from the defendant stockholders, and that the certificate be delivered into said court, and upon failure of said defendants to pay said judgment within a reasonable time, to be fixed by said court, said stock be sold and the proceeds thereof applied on said judgment, and if defendants pay said judgment without a sale of said stock that same be delivered to them. It not appearing from the evidence whether said notes of the corporation in the amount of $4,500 are now owned by the defendants, evidence should be taken to ascertain the fact, also evidence should be taken to determine the value of the receiver's certificate at the time it was transferred to the receiver.

The next transaction complained of occurred on or about August 13, 1930, while the plaintiff Duffy was president of and one of the directors of the corporation. The defendant Johnson at that time needed $2,900 to prevent a foreclosure against property owned by him. Johnson owned 11 37/50 shares of stock in excess of what was owned by Duffy, Baker and Condit. In order to raise the money Johnson offered to sell them two and a fraction shares each, retaining for himself two and a fraction of such shares. The price at which he offered to sell was

$725 for each two and a fraction shares. This offer was accepted by Duffy, Baker and Condit, and resorting to a custom previously inaugurated by the plaintiff Duffy, they each borrowed $725 from the corporation. Johnson also borrowed a like amount. They all gave the corporation their note except Duffy. Duffy did not execute his note, but received and cashed the corporation's check and paid the money to the defendant Johnson. New certificates for the two and a fraction shares each were made out, but were never signed by Duffy as president. Subsequently it was decided that the stock should be canceled and the indebtedness of the four to the corporation satisfied through such cancelation. The stock was canceled and the indebtedness satisfied. The amount which the corporation paid for the stock was less than 50 per cent. of its par value, no claim is made that it was worth less. It appears from the evidence it had a greater value.

It is contended by counsel for plaintiffs that this court should direct that judgment be entered against the defendants Condit, Baker and Johnson for $2,900, although the plaintiff Duffy was equally involved. The plaintiffs Elwood were the only stockholders not participating therein. No injury or prejudice was suffered by them or the corporation on account of the transaction, and no benefit would result either to them or the corporation if a judgment be entered against said defendants. The judgment of the trial court in denying such relief was right and will not be disturbed.

It is urged that the defendant Johnson, while a director in the defendant corporation, in the purchase of the property of the Service Transfer Company, a copartnership, composed of the plaintiff Duffy and the defendants Baker and Condit, made a secret profit of $4,375, and that judgment should have been rendered against him by the trial court in favor of the corporation for said sum. The facts in regard to this transaction are not in dispute. About the 31st of March, 1928, the plaintiff Duffy and the defendants Baker and Condit, who were not then stock-

holders in the defendant corporation, purchased from Walter S. Jardine and George F. West 125 13/50 shares of stock owned by them in defendant corporation for the sum of $37,578, and paid therefor in cash by borrowing $40,000 from a bank on their note. At that time defendant Johnson was a director in defendant corporation and the owner of 51 and a fraction shares of stock therein, the plaintiffs Elwood owned 33 shares and Lester P. Woodruff 4 shares. Defendant Johnson purchased from Duffy, Baker and Condit a one-fourth interest in the shares of stock purchased by them from Jardine and West and signed the note to the bank with them for the purchase price of said stock.

Upon the completion of the purchase of the stock of Jardine and West, Duffy, Baker, Johnson and Woodruff were elected officers of said corporation, the plaintiff Duffy, as president, and the defendant Johnson, as vice-president. The board of directors consisted of Johnson, Woodruff and Duffy. Thereafter at a directors' meeting, held on April 10, 1928, the defendant Johnson, as vice-president and director, made a proposal in behalf of the corporation to the plaintiff Duffy, Baker and Condit, proposing that the business of the Service Transfer Company be purchased and merged with that of the Omaha Merchants Express & Transfer Company, then engaged in a similar business in competition with that of the defendant corporation. On April 20, 1928, the Service Transfer Company, through the plaintiff Duffy, submitted a proposal in writing to the defendant corporation to sell all of its property and business, except book accounts owing to the company prior to March 31, 1928, for the sum of $32,500 payable in a series of demand notes carrying interest at the rate of 7 per cent. per annum from April 1, 1928. This proposal contained the condition that no dividends were to be paid by the company until the notes given for the purchase price were fully paid. The offer to sell was accepted for the defendant corporation by the officers and directors of said corporation, the plaintiff

Duffy, and defendants Condit, Baker, Johnson and Woodruff. The defendant corporation, through Duffy as its president, then executed its notes payable on demand, three for $9,375 each and three for $1,458.33 each. Two of the notes, one for $9,375 and one for $1,458.33, were payable to the plaintiff Duffy, and notes in a like amount were payable to the defendants Condit and Baker. At the same time the corporation executed its note to the defendant Johnson for $5,000, payable on demand, and paid him $1,800 in cash in settlement of an action he had commenced against the corporation and Jardine and West, previous to the sale of their stock, to recover salary claimed to be owing to him. Duffy, Condit and Baker then each indorsed to Johnson the notes for $1,458.33 given to them by the corporation; these notes represented the amount that it was agreed between Duffy, Condit, Baker and Johnson that Johnson was to receive for being instrumental in procuring the purchase by the defendant corporation of the property and business of the Service Transfer Company. This represented the only consideration for the transfer of said notes to Johnson. The evidence is that the selling price of the business of the Service Transfer Company was built up to a point where, plus the $5,000 note that Johnson had received in settlement of his action against the corporation, it equaled the purchase price of the West and Jardine stock, and when Duffy, Condit and Baker transferred to him the $4,375 in notes, that left each of said parties and Johnson holding notes of the corporation for $9,375. The corporation completed the payment of all of said notes on July 7, 1932. Nothing appears on the books of the corporation showing that Johnson received the $4,375 in notes.

It is conclusively established by the facts in this case that the defendant Johnson made a profit that was concealed and unknown to the stockholders not participating therein. In *Barber v. Martin,* 67 Neb. 445, we held: "The officers and directors of a corporation and the shareholders thereof sustain to each other the relation of

trustees and *cestuis que trustent,* and public policy forbids those who have accepted such positions of trust to take secret profits antagonistic to their duties as trustees." In 7 R. C. L. 458, sec. 442, it is said: "It is a cardinal principle that an officer of a corporation will not be permitted to make a profit out of his official position, but must give to the corporation the benefit of any advantage which he has thereby obtained; the law will not permit him to make a private profit for himself in the discharge of his official duties; and the officer must account to the corporation for secret profits made though the transaction in which they are made is also of advantage to the corporation." See, also, 14-A C. J. 123; 3 Clark & Marshall, Private Corporations, 2290, sec. 758.

It is contended by counsel for the defendant Johnson that Duffy, as one of the plaintiffs, having participated in the transaction, he cannot maintain this action, even though the defendant Johnson made a profit. It is true that Duffy, as a plaintiff, does not occupy a very enviable position so far as this transaction is concerned, and if he were the only complaining stockholder the judgment of the trial court in refusing relief might be sustained, but this action is brought for the benefit of the corporation. The plaintiffs Elwood, who own a substantial block of stock, did not participate therein, assent to it, or have any knowledge thereof until just prior to the commencement of this action, and they are entitled, in equity, to have said defendant account to the corporation for the benefit that he received. The trial court should have required him to account to the corporation for the $4,375 with interest at 7 per cent. from April 1, 1928.

It is claimed by plaintiffs that the defendant stockholders, as executive officers, received excessive salaries from April 1, 1931, up to December, 1932, and that judgment should have been rendered by the trial court in favor of the corporation against said defendants for all salaries received by them in excess of $3,000 per annum. The evidence is that from April 1, 1928, when the

plaintiff Duffy became a stockholder and managing officer, up to about April 1, 1931, the business of the company was conducted by four officers (one of whom was the plaintiff Duffy) who each received $4,800 per annum. About April 1, 1931, the salary of each of said officers was increased to $6,000. Duffy drew his salary on that basis from April 1, 1931, to April 1, 1932, although for six months of that time he performed but little service. At the annual meeting in April, 1932, Duffy not being present, it was decided that the services of one of the officers could be dispensed with, and the business of the corporation be conducted by three at salaries of $6,000 each per annum. Duffy ceased to be one of the officers at that time and drew no salary from then on. The effect of this was to reduce the total amount of salaries then being paid by the corporation by $6,000 annually.

The plaintiff William D. Elwood was present, representing himself and his sister, at the annual meeting in April, 1932, and testified that he knew from 1929 that the four officers of the corporation were each drawing a salary of $400 a month; that he thought the salary being paid was too much and made some objection to so many drawing a salary. He claims that he did not learn at that time that the officers were being paid at the rate of $500 a month. The records of the corporation were available to him, and had he made the slightest investigation of the books of the corporation or made inquiry he could have ascertained what was being paid.

The rights of creditors not being involved, it was within the power of the stockholders to assent to and agree to any salary they might deem advisable, although such salary or salaries might be more than was ordinarily paid for such services. The attitude of the plaintiffs in this matter is not such as to impress a court of equity in their favor. Duffy was a beneficiary of the raise in salaries from April 1, 1931, to about April 1, 1932. He made no complaint during that time, but drew the salary with regularity, which he now claims was excessive. He has

not made restitution to the corporation for the salary paid him in excess of what he now claims it should have been. No offer is made by the plaintiffs in their petition or otherwise to make restitution to the corporation for the claimed excess in salary that Duffy drew for a year. It appears from a statement in the briefs that the salaries of the three defendants have, since the filing of this appeal, been voluntarily reduced to $350 a month. The action of the trial court in denying a recovery against the defendant stockholders for claimed excessive salaries was right. To have entered judgment against them and allow the plaintiff Duffy, who drew the same salary for a year and who was an active participant in procuring the raise in salaries, to avoid payment on his part would have been unjust and inequitable.

Finally, it is contended by counsel for plaintiffs that a receiver should have been appointed for the defendant corporation. From April, 1928, to December 31, 1932, the corporation did a large business. The officers in charge of it were experienced in the kind of business that the corporation was engaged in. From April, 1928, to July, 1932, they paid off $37,500 of indebtedness incurred in the purchase of the Service Transfer Company and in the settlement of the defendant Johnson's claim for salary. In 1931 the gross income of the corporation was $175,805.51, and for the year 1932, during a time of great depression generally in business, its gross income was $117,294.91. During that year they greatly reduced the expense of conducting the business, and aside from the one transaction, where they used the money and property of the company to pay their own indebtedness and the sale of the 40 shares of stock to take up the obligation incurred thereby, the affairs of the corporation seemed to have been well managed. The power to appoint a receiver should be exercised with the utmost caution and only in case of an emergency, and generally should be avoided, especially where the corporation is solvent and the rights of creditors are not involved. It is apparent

that the plaintiffs, as minority stockholders, are in no danger of loss or injury if a receiver is not appointed. On the other hand, to appoint a receiver would impair the credit of the corporation, interfere with its management by those experienced in such matters, and impose on the court the duty of corporate management, for which it is not so well equipped. All the stockholders would suffer a loss thereby with no accruing benefit to any. We held in the case of *Howell v. Poff, supra*: "An application for a receiver for a corporation is directed to the sound discretion of the court and except for an abuse thereof the conclusion reached will not generally be disturbed on appeal." There was no abuse of discretion on the part of the trial court in denying the application for a receiver.

It follows from what has been said that the judgment is right and should be affirmed, except as to the two transactions pointed out, and as to such the judgment is reversed, with directions for further proceedings and to render judgment thereon conforming with this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.