## Andrew J. Grauel to use of Susanna Grauel and George P. Reibstein, Appellants, *v.* Jacob S. Wolfe.

*Practice, C. P.—Referee's findings of fact.*

The findings of fact of a master or referee based upon his belief as to the credibility of witnesses and the effect to be given to their testimony are entitled to the same consideration as the verdict of a jury, and should not be set aside except for manifest error; but when the facts found are mere deductions from undisputed testimony, or from other facts found from the testimony, they are entitled to no greater weight than his findings of law.

In an action of trespass to recover damages for alleged wrongful misrepresentations as to the condition and profits of a business sold by the defendant to the plaintiff, a referee's findings of fact in favor of the plaintiff will be reversed by the Supreme Court where the uncontradicted evidence shows that the plaintiff was thoroughly familiar with the same kind of business and was as capable of determining the value of his purchase as the defendant; that the books of the business were offered to him for inspection, but that he refused them, and conducted a private examination of his own, upon the strength of which he bought the business; and that the misrepresentations, if any, were confined to only a part of the business, the profits of the whole being greater than the amount represented.

Argued Jan. 27, 1898. Appeal, No. 186, Jan. T., 1897, by plaintiffs, from order of C. P. No. 3, Phila. Co., Dec. T., 1888, No. 732, sustaining exceptions to referee's report. Before STERRETT, C. J., WILLIAMS, MCCOLLUM, MITCHELL and FELL JJ. Affirmed.

Trespass for deceit to recover damages for alleged false and fraudulent representations made in the sale of the stock, fixtures and good will of a coffee roasting establishment by the defendant to the plaintiff.

The referee, Frank L. Lyle, Esq., found the facts to be as follows:

1. Jacob S. Wolfe, the defendant, owned and carried on the coffee roasting business at No. 2239 Wright street, Philadelphia. In January, 1888, he agreed to sell the business to the plaintiff for $3,500, which sum was afterwards reduced to $3,300, the difference representing the value of a horse which was not to be included in the sale.   This agreement of sale was subsequently varied as to the purchase money and on July 7, 1888, in pursuance of the prior negotiations, defendant transferred to the plaintiff the stock, good will and fixtures of said business, including the horse omitted in the first agreement of sale of January, 1888, above referred to, for $3,850, of which sum $2,550 were paid in cash, and the balance secured by a bill of sale from the plaintiff of the personal property transferred.

2. The negotiations for the sale of the business from the defendant to the plaintiff, commencing in January, 1888, and consummated upon July 7, 1888, constituted one transaction.

3. Defendant represented to the plaintiff that he had roasted for customers an average of from six to eight thousand pounds of coffee per week at one half cent per pound and toll (which consisted of three pounds of roasted coffee from every hundredweight sent to be roasted), and that he had sold each week in his business one thousand to twelve hundred pounds of coffee. These representations were made for the purpose of establishing in the plaintiff's mind the value of the defendant's business; and said representations were material and were relied upon by the purchaser.

4. The books of the defendant show that the roasting for customers done by him for seventy-eight weeks prior to the sale of July 7, 1888, averaged four thousand, nine hundred and nine pounds per week, and for the year 1887, immediately preceding the time the representations were first made, averaged four thousand six hundred and six pounds roasted per week.

5. The averages of roasting shown by defendant's books for

thirty-four weeks ending July 7, 1888, are two hundred and fifteen pounds per week in excess of the copy of the roasting book, exhibit No. 22, said exhibit being a copy of the book delivered to plaintiff by defendant as one of the books of the business, which shows a larger number of customers for whom work was done, but less roasting in the aggregate than appears by the books of the defendant.

6. For each thousand pounds of coffee roasted for customers at the time of the sale, the receipts amounted to $12.50, including the toll. The difference, therefore, between the actual roasting and that represented by the defendant was a most material variance in the extent of the business and in the value of the good will. This difference was known to the defendant and was concealed by him to deceive the plaintiff.

7. The defendant's sales were substantially as represented by him.

8. Plaintiff continued the business for four weeks at a loss each week. He soon discovered that the representations of defendant were not true, and tried to have the contract rescinded, but the defendant refused to do so. He then applied to counsel, who on August 1, 1888, communicated with defendant concerning the representations and had an interview with him. On August 8, 1888, plaintiff sold the business and all the personal property received from defendant to Messrs. Dilahay and Coppes for $1,000 in cash and a release from the bill of sale given defendant to secure $1,300 of the original purchase money. This sale was made with the full knowledge and approval of the defendant, and no testimony was offered to show that the full market price had not been obtained. The purchasers were employees of defendant who had been retained by plaintiff, and $750 of the $1,000 consideration paid to plaintiff was loaned to the purchasers by defendant, who took title to the personal property and secured himself by a contract of bailment with the purchasers.

9. Prior to the sale to plaintiff, defendant offered to show him his sales and roasting books so that he could ascertain for himself the business done. This plaintiff declined to do, stating that it was not necessary to look at the books, that he would trust the defendant, and that he believed to be true that which the defendant represented.

10. The representations made by defendant as to the roast-

ing done in his business were false, and were known to him to be false. They were material and were relied upon by the plaintiff, and he was deceived thereby.

The referee reported that judgment be entered against defendant for $2,181.70.

Exceptions to the referee's report were sustained by Mc-MICHAEL, J.

*Errors assigned* were in sustaining exceptions to referee's report.

*Joseph H. Shoemaker* and *Charles H. Sayre*, for appellants.— The referee's conclusions on the facts of the case must be regarded in the same manner as the verdict of a jury: Gonser v. Smith, 115 Pa. 452; Phila. Co. v. Gas Improvement Co., 180 Pa. 235.

The rule of caveat emptor does not apply when the seller induces a purchase on certain terms by wilful misrepresentations upon material points: 2 Schouler's Personal Property, sec. 604; Hershey v. Keembortz, 6 Pa. 128; Boorman v. Jenkins, 12 Wendell, 576; Gardiner v. Gray, 4 Campb. 144; Atwood v. Small, 6 Clark & Finnelly, 233; Stewart v. Stearns, 63 N. H. 99; Savage v. Stevens, 126 Mass. 207; Coon v. Atwell, 46 N. H. 510; Starkweather v. Benjamin, 32 Mich. 305.

A contract may be set aside for fraudulent misrepresentations, though the means of obtaining information were fully open to the party deceived, where, from the circumstances, he was induced to rely on the other party's information: Reynell v. Sprye, 8 Hare, 221; Matlock v. Todd, 19 Ind. 130; 2 Pomeroy's Eq. Jur. sec. 895; Cottrill v. Krum, 100 Mo. 405; Adams Eq. (8th ed.) *177; Moncrieff on Fraud and Misrepresentation, 173; Ry. Co. v. Kisch, L. R. 2 H. L. 99; Stanley v. McGauran, 11 L. R. Ir. 314; Wannell v. Kem, 57 Mo. 478; Gammill v. Johnson, 47 Ark. 335; Hutchinson v. Morley, 7 Scott, 341; Cruess v. Fessler, 39 Cal. 336; Webb's Pollock on Torts, p. 377; Dobell v. Stevens, 3 B. & C. 623; Blacknall v. Rowland, 108 N. C. 554; Bank v. Hunt, 76 Mo. 439; Sankey v. Alexander, 8 Ir. R. Eq. 241; Caldwell v. Henry, 76 Mo. 254.

In cases of fraudulent representations, the purchaser is not bound to restore the vendor to his original position, or to re-

scind the contract: Heastings v. McGee, 66 Pa. 384; Guffey v. Clever, 146 Pa. 548; Lukens v. Aiken, 174 Pa. 152; 2 Kent's Com. *480; Chandelor v. Lopus, 1 Sm. L. C. (Hare & Wallace's notes) 294; Whitney v. Allaire, 4 Denio, 554; Chandelor v. Lopus, 1 Sm. Lead. Cases, 353; Mahaffey v. Ferguson, 156 Pa. 156.

It is enough to show that there was a fraudulent misrepresentation as to any part of that which induced the party to enter into the contract which he seeks to rescind: Kennedy v. Panama, etc., Mail Co., L. R. 2 Q. B. Cases, 580, 587; 2 Kent's Com. *482, note; Litchfield v. Hutchinson, 117 Mass. 195.

*E. Hunn Hanson*, with him *Wm. Grew*, for appellee.—When the determination of a referee is an inference from uncontradicted facts, he has no monopoly of logical method, and no greater faculty for reaching a correct conclusion than had this court; and hence in such a case there is no special weight given here to the inference drawn by a referee: McConomy v. Reed, 152 Pa. 42.

Where parties treat on the basis of trust and confidence, either as to occult qualities or for any other reason, the rule is to hold the party making the representations bound by them; but that relation is never presumed in ordinary transactions where each may inform himself. In such cases the relation and deception must both be proved to set aside an agreement: Clark v. Everhart, 63 Pa. 347; Slaughter v. Gerson, 13 Wall. 379; Farnsworth v. Duffner, 142 U. S. 43; Attwood v. Small, 6 Cl. & Finn. 232.

OPINION BY MR. JUSTICE FELL, March 21, 1898:

The findings of fact by a master or referee, based upon his belief as to the credibility of witnesses and the effect to be given to their testimony, are entitled to the same consideration as the verdict of a jury, and should not be set aside except for manifest error; but when the facts found are mere deductions from undisputed testimony, or from other facts found from the testimony, they are given no greater weight than his findings of law. The rule is well stated by our Brother McCOLLUM in the opinion in McConomy v. Reed, 152 Pa. 42: "It may be stated as a general principle that where the evidence is conflicting and the

credibility of witnesses is involved a master's finding upon a question of fact is entitled to the same consideration as the verdict of a jury, and will not be set aside unless it is clearly and palpably against the weight of the testimony. If, however, his finding is a deduction from undisputed facts, or from uncontradicted and credible evidence, the controlling reason for the application of this principle is not present, because in such a case he has no greater facilities for reaching a correct conclusion than the court has in passing upon the exceptions to his report."

The primary error of the learned referee is in his conclusion that a relation of confidence existed between the vendor and the vendee, and this conclusion is an inference from admitted facts or practically uncontradicted testimony. The transaction was an ordinary one of bargain and sale. The vendee had been in the same kind of business for forty years, he was thoroughly familiar with the business in all its details, and was as capable of determining the value of what he bought as was the vendor. He made his own investigation, in his own way, during the negotiation which extended over a period of six months. It is true that when asked to examine the books he declined, saying that he would rely on the vendor's statement as to the amount of sales and profits, but it is evident that he did not rely on these statements. He instituted and carried on an investigation of his own, and kept it up for weeks ; he saw and conversed with the vendor's employees repeatedly, he examined the slips on which sales were entered on the order books, and made extracts therefrom without the vendor's knowledge, and he appears by this means to have become entirely familiar with the character and extent of the business before he bought it. His knowledge thus acquired, if not as full as that which might have been obtained from an examination of the books, appears to have been more satisfactory to him, and we cannot but conclude from the testimony that it was upon this knowledge that he acted. If he undertook to judge for himself, or if he acted upon the knowledge gained in his investigations, to verify the representations made, there was no relation of trust between him and the vendor.

Nor do we find that there was in fact any fraudulent representation made by the vendor. It was conceded that the sales of coffee made by the vendor were substantially as represented

by him, and the referee does not find that there was any mis-representation as to the amount of the profits of the business. The uncontradicted evidence from the books produced is that the profits were in excess of the representation made. The only remaining allegation of fraud was that the representation as to the amount of coffee roasted for customers was untrue. Whether the representation made related to the whole amount of coffee roasted or only to that roasted for customers was disputed by the testimony. But taking the view most favorable to the plaintiff, and assuming that the representation related to the roasting of coffee for customers, the testimony would not sustain a finding of fraud. Two expert accountants who had examined the books testified. One found that the whole amount of roasting done for both customers and for sale equaled the amount represented, and as the profits on coffee sold exceeded the profits on roasting done for others, if there was a discrepancy between the facts and the representation, the plaintiff profited by it. The other witness found that the amount appearing from the books was short of the amount represented, but he had not, because of the imperfect manner in which the books were kept, brought the account up to within four months of the time of the sale of the business. When recourse was had to the books the defendant was entitled to have the whole account considered, and we can see no reason for setting aside the conclusion reached from a full examination and adopting that reached by a partial one.

The decree of the court is affirmed at the cost of the appellant.