WILLIAM S. GOULD, Plaintiff, *v.* PAUL E. FLATO and PAUL E. FLATO, INC., Defendants.

Supreme Court, Special Term, New York County, May 25, 1938.

*Francis A. McGurk,* for the plaintiff.

*Larkin, Andrews & McNaughton,* for the defendants.

SHIENTAG, J.   This is an action in fraud brought to recover damages for alleged misrepresentations inducing the purchase of a pearl necklace.   The complaint contained two causes of action, both sounding in fraud, one for damages and the other for rescission.   The plaintiff at the trial elected to proceed on the first cause of action and he abandoned the second.   No cause of action for breach of warranty or negligence was stated.

In November, 1927, the plaintiff purchased from the defendants for $47,000 a pearl necklace, consisting of sixty-seven matched Oriental pearls.   At the time of the sale the pearls weighed 300.40 grains, of which the center pearl was 15.56 grains.   Mrs. Gould, the plaintiff's wife, had been looking at various pearl necklaces for some time prior to the purchase.   Her fancy had fixed upon two strings as suitable to her requirements.   One of these strings belonged to Tiffany & Co., the other to the defendants.   Both were sent to her home for inspection and comparison.   When Flato, the defendant, sent her his string he told her that he had collected the pearls in the necklace, that they were all new pearls, that the necklace was very fine and that he considered it exceptional. He later personally called at the Gould home and examined the Tiffany string.   Flato pointed out a flaw in that string to Mrs.

Gould and urged her to submit his necklace to an expert for approval.

Mrs. Gould showed both necklaces to one Ross, now dead, who had been in the employ of Tiffany & Co. either as a buyer or a salesman of pearls. Although there is a dispute concerning Ross's qualifications as an expert, Mrs. Gould testified that " he was considered their [Tiffany's] consultant on pearls;" that she " thought he was a very good man to consult," and that she " did not think Flato knew quite as much as Ross." Ross examined both strings and said that Flato's necklace was " a very handsome string of pearls, well matched, well graded and of good color."

That evening Mrs. Gould telephoned Flato and asked him to call at her home. When he arrived the same evening she told him she had decided to purchase his string. Thereupon Flato told Mrs. Gould that his necklace was " of very rare quality," had " a wonderful rose color," and that he hoped Mrs. Gould would be happy with it. He repeated that the pearls were all new, and added that they were well matched and " perfect as pearls go." Mr. Gould testified that Flato at this time said that they were pearls of the " finest quality, or words to that effect." Flato himself admitted that he represented the pearls to be " sound." At the trial Mrs. Gould declared that she relied both on Ross' judgment and on Flato's alleged representation that the necklace was a " perfect string," which to her meant a string that was " well matched " and composed of " equally graded pearls of good quality."

Mrs. Gould seemed content with her necklace until some time in 1931, when she discovered a defect in the large center pearl. She took the string back to Flato, who said that there was nothing the matter with the pearl, but that since he wanted Mrs. Gould to be happy he would look around for another pearl to replace the center one. From that time until 1935 Mrs. Gould kept complaining to Flato, who stated that he was looking for another pearl but without success. Finally, in 1935, when Mrs. Gould complained of roughness in the pearl, Flato told her that the pearl was dirty and needed treatment. He treated the pearl, but Mrs. Gould was still dissatisfied with it. Flato then submitted the pearl to an expert, Rosenberg, for treatment, and on returning it to Mrs. Gould stated that it was in perfect condition.

Flato's testimony differs from Mrs. Gould's in several respects. He testified that Mrs. Gould first complained of the pearl in 1929. At that time he told her it was a sound pearl. Flato, however, took the pearl, and, after consulting with the people who had sold it to him, returned it to Mrs. Gould with a letter in which he stated that the pearl was sound and in perfect condition. Mrs. Gould denies ever having received this letter and of ever having complained

of the pearl in 1929. Flato further testified that Mrs. Gould brought the pearl back in 1935, when Flato found that it was dirty. He sent it to Rosenberg to be cleaned and returned it to Mrs. Gould in allegedly sound condition. Flato examined the pearl on the stand, noted some roughness in it, and stated that it was not in the same condition as when it was first sold to Mrs. Gould, although in his opinion it was still a sound pearl.

Plaintiff's expert, Rosenberg, the person to whom Flato had sent the pearl for cleaning in 1935, testified that the pearl was a "pealer." If the skin of an ordinary sound pearl was peeled a "perfect" pearl would remain after the outer skin was removed. But a "peeler" could never be skinned to produce a "perfect" pearl, for its skins unraveled indefinitely. Rosenberg testified that this condition was the result of overbleaching in India, the source of the pearl. He further stated that he had not cleaned the pearl in 1935, but had merely smoothed its surface. This treatment improved the appearance of a "peeler" pearl, but the condition could never be cured. An expert, according to Rosenberg, could have discovered the condition in 1927, although the pearl might have appeared to be "perfect" on ordinary inspection.

Flato and the experts produced by him testified they had never heard of a "peeler" pearl or the cause of the conditions as stated by Rosenberg. Their testimony generally was to the effect that the present condition of the pearl could have been caused by various physical influences to which it was subjected after being sold to Mrs. Gould. Their testimony was in conflict on whether the pearl was a "sound" pearl today. Although some testified that it was not "sound," the expert who had originally sold the pearl to Flato said that there was little difference between the pearl today and when it was sold, save for some flakings.

There is little doubt, however, that the pearl is not sound at the present time. Flato himself indicated that this was so when he stated that if he were selling the pearl today he would do so with reservations. There is a conflict in the testimony, however, as to whether it was unsound at the time it was purchased. On this point I accept the testimony of the witness Rosenberg that the pearl is a "peeler" and that it was in unsound condition at the date of purchase. There is another sharp conflict in the testimony on the question whether the condition of the pearl could have been discovered by an expert in 1927. Here, too, I accept the testimony of the witness Rosenberg that the defect could have been discovered by an expert at that time. There is nothing to indicate, however, that Flato knew that the pearl was defective at the time he sold it or that he acted in the matter otherwise than honestly and in good

faith. Despite some intimation to the contrary which does not rise to the dignity of proof, there is no doubt that the present pearl is the one sold to Mrs. Gould in 1927 and which Ross examined.

Flato testified that he was not an expert on pearls and never considered himself as such. He did not, however, tell the plaintiff or Mrs. Gould that he was not an expert. On the contrary, to them he always appeared to be one, for it was his eye that detected the flaw in the Tiffany necklace. Dealing in a product whose purchaser is peculiarly dependent on the good faith of the seller, and acting apparently as an expert, Flato must be held to the same standard that would apply to one who was in fact an expert. In these circumstances Flato, with full belief that his statements were true, made representations as to the quality of the pearls, not matters of opinion, but statements of fact, which an expert could have ascertained were untrue in so far as the center pearl was concerned. Does this impose a liability in fraud upon the defendants?

One of the elements to be proven in a fraud action is reliance on the misrepresentation. The misrepresentation need not be the sole inducing cause of the transaction, for a person is deemed to have relied upon a misrepresentation when he would not have acted in the transaction as he did but for the false statement. (*Stewart* v. *Lester*, 49 Hun, 58; *Karscher* v. *Dewald*, 246 App. Div. 21.) The facts in the instant case do not warrant a finding that the plaintiff would not have entered into the bargain except for the representation of the defendants. Mrs. Gould's testimony indicates that the representation as to quality was made by Flato only after she had submitted the pearl to Ross and had decided to purchase it.

The plaintiff has also indicated that he did not rely upon the defendant's statements because he resorted to other sources for information. Not alone was the necklace submitted to Ross, but Mrs. Gould testified that she thought he, being an older man and in the business for a longer time, knew more about pearls than Flato. It is true that the mere fact that the plaintiff made inquiries of others will not necessarily show a want of reliance. (*Addington* v. *Allen*, 11 Wend. 374; *Urdang* v. *Posner*, 220 App. Div. 609; affd., 247 N. Y. 565.) But there has been no reliance if from all the facts and circumstances it appears that the buyer acted as a result of his own judgment after independent investigation and without substantial dependence on the seller's representations. (Harper on Law of Torts, [1933] § 225; Cooley on Law of Torts [4th ed.] [1932], § 362; 26 C. J. 1162; *Southern Development Co.* v. *Silva*, 125 U. S. 247, 259; *Hagee* v. *Grossman*, 31 Ind. 223; *Poland*

v. *Brownell*, 131 Mass. 138; *Grauel* v. *Wolfe*, 185 Penn. St. 83; 39 A. 819.) On all of the facts in the case it must be held that Mrs. Gould relied not upon the representations as to quality but upon her own judgment, formed after consultation with her chosen expert.

Even if there was reliance by the plaintiff there would be no liability in damages for fraud and deceit in the circumstances of this case. It is important to emphasize again that there are no allegations for rescission, breach of warranty or negligence to be considered.

The question of the nature of the liability imposed for various types of misrepresentation has in late years become the subject of much discussion. (See Harper on Law of Torts, [1933] §§ 76, 221, 222; Labatt, Negligence in Relation to Privity of Contract, [1900] 16 L. Q. Rev. 168; Smith, Liability for Negligent Language, [1900] 14 Harv. L. Rev. 184; Williston, Liability for Honest Misrepresentation, [1911] 24 id. 415; Bohlen, Misrepresentation as Deceit, Negligence or Warranty, [1929] 42 id. 733; Green, Deceit, [1930] 16 Va. L. Rev. 749; Carpenter, Responsibility for Intentional, Negligent and Innocent Misrepresentation, [1930] 24 Ill. L. Rev. 749; Weisiger, Basis of Liability for Misrepresentation, [1930] 24 id. 866; Bohlen, Should Negligent Misrepresentations Be Treated as Negligence or Fraud, [1932] 18 Va. L. Rev. 703.) In New York there are two types of tort liability for misrepresentation which are really instances of the general liability for intended wrongs and for negligent wrongs.

There exists in New York a tort liability for deceit. As a general rule, scienter, or a consciousness that one is misrepresenting the facts, must exist. Scienter is present when a person makes a statement which he knows to be false. Scienter also exists when a person makes a statement which is false and at the time he has a doubt whether it is true. If he realizes that he does not know whether it is true or false he is guilty of a fraudulent misrepresentation, since his statement of the fact is an affirmation that he knows it to be true. (*Hadcock* v. *Osmer*, 153 N. Y. 604; Harper, *supra*, § 221.) If the one making the false statement has blinded himself to obvious data it may be found as a fact that he must have appreciated that he did not know whether his statement was true. This is a question of fact dependent on the circumstances of the individual case. Representations of this character cannot be described as merely the use of negligent language, for the utter ignorance or reckless disregard of their truth or falsity imports an element of deliberateness in the deception. The action to enforce liability for such representations is one in fraud and is governed by the

general principles that apply to intended wrongs. The plaintiff's negligence is no defense and the defendant cannot avoid liability by pleading that he did not stand in privity with the plaintiff.

There also exists a liability in tort for the negligent use of language to convey erroneously correct information or to convey correctly erroneous information derived from inadequate data. There must, however, be a relationship between the parties of such a character as to make the defendant's conduct a misfeasance or to create an affirmative duty on the part of the defendant to exercise due care. (*Glanzer* v. *Shepard*, 233 N. Y. 236; *Ultramares Corp.* v. *Touche*, 255 id. 170.) Where the relationship is such that as a matter of good faith and general social policy the defendant should exercise diligence to see that the information conveyed is correct or that it is accurately communicated, a liability in negligence arises for a failure to abide by the proper standard of care. Since the action is one for negligence and the principles of the law of negligence apply, " honest belief " in the truth of the representation is no defense, although proof of contributory negligence will defeat the action. The law imposes the same duty upon the plaintiff to protect himself through the use of reasonable care as it imposes upon the defendant to protect the plaintiff. (*International Products Co.* v. *Erie R. R.*, 244 N. Y. 331.) This constitutes, in essence, the liability for " negligent misrepresentation."

The facts in the case at bar make out a cause of action in tort only for a negligent misrepresentation. The most that can be said is that Flato was negligent in failing to detect the flaw in the center pearl when he sold it in 1927. There is nothing to indicate that he was possessed of a " furtive intent," which is the principal characteristic of the action for deceit, or that he was so reckless in disregarding the facts that he can be presumed to have realized that he did not know whether the center pearl was sound when he sold it. It is significant that the expert Ross also failed to detect any flaw in the pearl, and the evidence of Rosenberg indicates that only unusual skill could have ascertained the true condition of the pearl at that time.

We have been enjoined that in this branch of the law, at least, the forms of action are to be observed and that one cannot recover in fraud merely by proving negligence. ( *Ultramares Corp.* v. *Touche, supra,* at p. 186.) For the same reason, although the facts may indicate a right to sue in contract for breach of warranty, we are not at liberty to allow a recovery unless a liability in tort has been made out. Not only do the defenses vary as the nature of the action changes, but the measure of damages differs in tort and in contract. (Cf. *Reno* v. *Bull*, 226 N. Y. 546; Pers. Prop. Law, § 150.)

Another factor preventing recovery is the defense of contributory negligence, which is available in an action for a negligent misrepresentation. The facts indicate that the plaintiff was guilty of contributory negligence in this case. Prior to Mrs. Gould's purchase of the necklace she submitted it to Ross for examination. Ross did not tell her of any defect in the center pearl. If, as the plaintiff himself attempted to show at the trial, Ross was not an expert, then there was negligence in submitting the necklace to one incapable of ascertaining the true facts. If, on the other hand, Ross was an expert, but failed to perceive the defect, his negligence must be imputed to the plaintiff, who selected him for the specific purpose of examining the pearl for defects. The defendant, having acted honestly, should not be penalized for the failure of the plaintiff to use the degree of care demanded of an ordinary reasonable person acting in these circumstances.

The plaintiff urges that the New York courts recognize a third type of liability for misrepresentation, a species of liability without fault, which is redressable in an action in damages for fraud and deceit. Liability, it is asserted, will be enforced for the representation as true of one's own knowledge of a fact capable of accurate ascertainment, which is actually false. It is claimed that this liability will be imposed although the defendant has acted in entire good faith, honestly thinks his statement is true, has asserted the fact only after careful investigation, believes he knows whereof he speaks and has reasonable grounds for so believing. In other words, that the party making the statement must be treated as though he had warranted the truth of the matter.

The New York cases cited in support of this proposition, however (*Hadcock* v. *Osmer, supra; Ultramares Corp.* v. *Touche, supra; Bystrom* v. *Villard*, 175 App. Div. 433; appeal dismissed, 220 N. Y. 765; *Arnold* v. *Richardson*, 74 App. Div. 581), were all cases where the defendant was held, on the facts presented, to have realized that he did not know whether his statement was true, and were but examples of the classic action for fraud and deceit. Doubt is thrown on the existence of this third type of action in this State when one considers that one who makes a negligent misstatement does not subject himself to a liability in deceit. ( *Ultramares Corp.* v. *Touche, supra.*) It would be unreasonable to hold that whereas one who is negligent is not liable for damages in fraud, one who exercises the utmost care but errs, nevertheless, is guilty of a deceit.

If there is a tort action for honest, non-negligent misrepresentation in New York its peculiar nature must be noted, for it is an action neither in deceit, negligence nor breach of warranty. (See Harper, *supra*, §§ 221, 222.) If such an action exists the liability grows

out of a factual situation similar to that found in the case of warranty, and is imposed for reasons of social policy. The availability of defenses to the action, therefore, should depend not upon the strict form of the action as one in fraud and deceit, but should rather be determined by the same considerations of public policy that created the action. Certainly, contributory negligence should constitute a valid defense. (Harper, *supra*, § 221.) That defense being available to one who is negligent in stating the facts, it should clearly be a ground to prevent liability on behalf of one who has exercised due care. In the circumstances of this case, as has already been pointed out, plaintiff must be held to have been contributorily negligent.

In the view I have taken of the case it is unnecessary to consider the other defenses raised.

Judgment for defendants. Twenty days' stay of execution and thirty days to make a case. Settle judgment.