ALMEDA STIEBER, APPELLEE, V. ETTA MAY VANDERLIP ET AL., APPELLANTS: CHRISTIAN O. SCHLYTERN, ADMINISTRATOR, ET AL., APPELLEES.

287 N. W. 773

FILED SEPTEMBER 29, 1939. No. 30525.

*George I. Craven* and *Bryan Littrell,* for appellants.

*Clark Jeary* and *Loren H. Laughlin, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and JOHNSEN, JJ.

JOHNSEN, J.

This is a suit to cancel a contract for support and the conveyances executed in connection therewith and to require an accounting.

The term defendants is used in this opinion to refer to Etta May Vanderlip, plaintiff's daughter, and to Bryan Littrell and Louis J. Patz, who were the attorneys for both parties in the transaction. The real estate conveyed consisted of an undivided interest in the property which constituted the estate of plaintiff's second husband, Fred Stieber, deceased. The administrator with will annexed of the Fred Stieber estate and the referee in a proceeding to partition the property also were named as defendants in the petition, but they have no real interest in the result of this litigation and will not be referred to further herein.

The petition alleges in substance that defendants had conspired to defraud plaintiff of all her property; that they secured her signature to conveyances of the real estate involved, in favor of defendant, Mrs. Vanderlip, while plaintiff, by reason of age and illness was unable to understand or transact business; and that they were able to obtain possession of the property from her because of her condition and the confidence which she reposed in them by virtue of the trust, professional and confidential relationships which they had previously borne to her.

The contract for support and the conveyances involved were executed on June 2, 1936. Plaintiff claimed that she had no knowledge that she had executed the contract or made unconditional conveyances of title to her daughter. She was at the time approximately eighty years old. The trial court made the following finding with respect to her condition: "During the trial of this cause, and while the plaintiff was upon the witness-stand, the court gave careful consideration and scrutiny to her testimony, her appearance and her demeanor. A portion of the time while she was on the stand she appeared to have her full mental faculties, while at other times she was confused and bewildered. From a full consideration of all the evidence in

the case, the court is of the opinion that because of her age and the general debility with which she suffered at the time of the happening of the transactions involved herein, she did not have her full mental faculties, and was a person who was easily persuaded, and was lacking in stability."

As to the previous relationships of the parties, defendant Mrs. Vanderlip had been making her home with plaintiff since the death of Fred Stieber in 1930, and, according to the recitation in the contract for support, she had, for two years, "nursed, administered to the needs, and cared for" plaintiff. Littrell and Patz had been Mrs. Vanderlip's attorneys in some preceding litigation and had then been engaged by plaintiff to look after her interests in the Fred Stieber estate. Patz made social visits at plaintiff's home, took her to "movie" shows, and on occasion brought out refreshments. Littrell used to chauffeur plaintiff downtown in his automobile, and, at times when he was busy, had his father do so.

On February 3, 1936, while plaintiff was ill in bed, Patz, on his own initiative, went to her home and had her execute, what he intended as, and thought at the time was, an irrevocable power of attorney, giving him the right, for a three-year period, to take possession of all her property, collect the income therefrom, and "buy, sell, exchange, trade, mortgage, and to deal in any and every way with said property, both real and personal, as he may determine to be for my best interest." The excuse which he gave on the witness-stand for having taken the power of attorney was that he wanted to make certain that plaintiff could not fire him as her attorney. On the same occasion, he had plaintiff execute a note and mortgage for a $1,500 loan from Mrs. Vanderlip, took charge of the loan proceeds, and, within a few days, issued a check for $500 to Littrell and Patz, for legal services previously rendered to plaintiff. A short time later, on June 1, 1936, he issued another check to himself, in the sum of $150, for further legal and trustee services rendered plaintiff. Plaintiff claimed to have no knowledge that Mrs. Vanderlip had ever made her a loan or that she had ever executed any note or mortgage in her favor.

On June 2, 1936, according to plaintiff, Mrs. Vanderlip told her that Patz wanted her to come to his office to execute some papers. She had had some previous conversation with Patz about a suit against her by the Citizens State Bank of Bennett, Nebraska. It appeared that one of Mrs. Vanderlip's sons at one time had induced plaintiff to sign a blank note, which he had fraudulently used to obtain a loan at the Bennett bank. Patz had suggested to her, so she said, that she ought to execute deeds to her property, so that, if judgment was recovered against her, it could not be collected on execution. It seems to have been her impression that it was on this matter she was being called to Patz's office. What she actually executed, however, was a contract between herself and Mrs. Vanderlip, which Patz had previously prepared, and in which she agreed to convey all her property to Mrs. Vanderlip, in consideration of an obligation on the part of the daughter to provide her with a home and support. At the same time she executed, in favor of Mrs. Vanderlip, nine deeds of conveyance to her property, which Patz had prepared also. No copy of the contract for support appears to have been given to her. Concurrently with the execution of all these instruments, Patz had Mrs. Vanderlip execute a power of attorney, giving him the power to control and dispose of all of the property, and containing a provision that sought to make it irrevocable except by mutual consent.

Defendants contended and endeavored to show that the contract for support had been prepared at plaintiff's previous request and that it was fully read and explained to her at the time. The notary public testified to the care exercised by him in taking the acknowledgment, and to that also of a witness to the execution of the contract. After a careful consideration of all the evidence contained in the one thousand page bill of exceptions, however, the conviction is clear that plaintiff did not know or understand that she had executed a contract for support and had given her daughter her property as a consideration therefor. She thought she had merely executed some deeds which were to

be held by Patz, as a protection to her, until the claim of the Bennett bank had been disposed of. This is apparent, not merely from her words, but also from her actions, and when we consider that there is involved an eighty-year old woman, past the age of guile and calculation, her simple actions are demonstratively significant. When she subsequently learned that Mrs. Vanderlip had made a settlement of her son's obligation to the Bennett bank and that there was accordingly no outstanding liability against her, plaintiff went to Patz's office and requested back her deeds, insisting that there was now no necessity for him to hold them longer for her. In this incident there is no self-serving calculation, but a manifestation of simple, honest understanding. Incidentally, Patz up to that time had kept the deeds in his file unrecorded, except as to one piece of property in Kansas. After plaintiff's request for their return, he promptly had all of them recorded.

During the period from June 2, 1936, to the bringing of this suit, plaintiff's life had gone on much as before. Mrs. Vanderlip and she continued to live together. When she failed to receive spending money, she went to Patz's office to see about the matter, indicating that she still thought he was looking after the property for her, as before. Mrs. Vanderlip seems to have become somewhat less tolerant toward her after the conveyances, and on one occasion, when some irritation developed, she shoved her mother against a bed and injured her and then refused to speak to her for a period of several weeks. We refer to these incidents merely to show that there is nothing in them to indicate that plaintiff comprehended or was knowingly accepting the status which the contract for support had created.

It is, of course, impossible to detail all the evidence contained in the record. Defendants Littrell and Patz strove vigorously to show their good faith and to prove plaintiff's mental competency to enter into the transaction. It is unnecessary for us here to comment upon defendants' motives. They may have been intended to be in plaintiff's best interest, although some of the things which were done through-

out their relationship with plaintiff can hardly merit professional acclaim. Many of the circumstances which occurred have already been set forth. Plaintiff attacks the good faith of Littrell and Patz on the further ground of their failure to make the obligation for support a lien on the property conveyed, especially since Mrs. Vanderlip had virtually no resources against which the obligation could be enforced other than the property conveyed to her by plaintiff. This may have been mere professional oversight, perhaps.

The trial court rightly held that Littrell and Patz occupied a confidential relationship to plaintiff, whose responsibility was not lessened because they were also representing Mrs. Vanderlip in the transaction. Mrs. Vanderlip, too, bore a confidential relationship to her mother, in view of the latter's age, physical infirmity, mental instability, and the situation arising out of the fact that she was making her home with plaintiff and exercising daily care and supervision over her. Defendants knew that plaintiff reposed trust and confidence in them. They knew she was old and unstable. Patz, as previously indicated, had tried to protect himself against her instability by insisting that she give him a purportedly irrevocable power of attorney.

By virtue of their past relationships to plaintiff, and her age, physical infirmity and mental instability, it was the duty of all the defendants to see that no possible advantage was taken of her. Neither Mrs. Vanderlip nor Littrell and Patz in her behalf could deal at arm's length with plaintiff. Nor could they enter into a transaction with her of personal benefit to any of them, where, as here, she was without independent advice, unless it was convincingly clear that she knew just what she was doing and, with a full understanding of the transaction, was willing to enter into it. It is not a question of whether plaintiff was lacking in general mental competence or whether defendants can be said to have perpetrated a deliberate fraud upon her. In the confidential relationship in which both Patz and Mrs. Vanderlip stood to plaintiff, and in Patz's attempt to act

as attorney for Mrs. Vanderlip, if he failed to make the transaction clear to plaintiff, and by reason of that fact induced her to execute instruments which she otherwise would not have done, she was imposed on, whether it was intentional or not, and such imposition would constitute in equity a constructive fraud.

The principles involved in the foregoing statements are fundamental and well established. 2 Pomeroy, Equity Jurisprudence (4th ed.) sec. 956; 12 C. J. S. 975, sec. 26; 9 Am. Jur. 363, sec. 17. The rule as to confidential or fiduciary relations applies to any transaction or situation of advantage, in which confidence is rightfully reposed on one side and a resulting superiority and opportunity for influence is thereby created on the other. In any such case where confidence is known, or may reasonably be expected, to exist as a fact, whether it is of a legal, moral, social, domestic or personal character, equity will scrutinize the transaction critically—and especially so where age, infirmity and instability are involved—to see that no inequitable action has been taken and no injustice has occurred. Its purpose is not merely to satisfy itself of absence of pressure or influence, but to be certain that the fullest and fairest explanation possible has been made, and that complete knowledge, understanding, intention, consent and freedom of action duly existed.

The preponderance of the evidence clearly brings the facts of this case within the foregoing rules. Defendants point out the weight that should ordinarily be given instruments that have been duly witnessed and acknowledged, but, when the whole situation in this case is focused, the principles of equity point to only one path and one duty.

In addition to canceling the contract for support and the deeds of conveyance, the trial court entered judgment against Louis J. Patz and Etta May Vanderlip for $1,277.85, which was the amount of cash assets belonging to plaintiff that had come into Patz's hands, under his several powers of attorney, after crediting the sums actually paid to plaintiff. The decree refused to allow any credit for the $650

which Patz had turned over to Littrell and Patz for attorneys' and trustee's fees, because of the manner in which they had been collected and appropriated, and made no finding as to any amount that might be due for legal services rendered plaintiff prior to the transaction of June 2, 1936, but left the parties to such other remedy as might be available to them.

Equity, once having taken jurisdiction of an accounting, should, if possible, dispose of and terminate the entire controversy between the parties. The record shows that there was a considerable amount of legal services rendered plaintiff in other preceding matters. While we cannot commend the manner in which the fees involved were apparently purposely allowed to drift, with no effort at collection or even acquainting plaintiff with their amount, Littrell and Patz will nevertheless, as a matter of fairness, be allowed the sum of $400 for all services of every nature which they have rendered to plaintiff. To this extent the decree of the trial court should be modified. We would be disposed, also, in view of the past relationship and mode of life of plaintiff and her daughter, to allow Mrs. Vanderlip credit for any sums paid to her by Patz which were actually used for the living and household expenses of her mother and herself. The record, however, does not enable us to determine this amount with any degree of certainty, and we are unable therefore to allow the credit. Under the circumstances, the judgment against Patz and Mrs. Vanderlip should be reduced to the sum of $877.85, with interest from the date of the decree of the trial court, but with leave to the parties to show any sums that may have been paid to plaintiff during the course of this litigation and which ought to be credited thereon, and with leave also to plaintiff to require a further accounting of any sums that may since have come into the hands of Patz or Mrs. Vanderlip out of plaintiff's property. Out of the $877.85, plaintiff was entitled to have had judgment entered against Bryan Littrell for the $250 appropriated by Littrell and Patz, for which credit has not been allowed herein, but plaintiff has taken no cross-appeal from the failure of the trial court to enter such judgment.

Defendants complain because part of the money for which they are required to account represented the balance of the proceeds of the loan made by Mrs. Vanderlip. They say it would be inequitable to enter judgment for this money, if the note and mortgage are to be canceled. The note and mortgage executed by plaintiff in favor of Mrs. Vanderlip prior to the transaction of June 3, 1936, are not in issue in this suit and are not affected by the trial court's decree.

The decree of the trial court as herein modified is affirmed, with the costs of this appeal taxed against defendants.

AFFIRMED AS MODIFIED.