Hillsborough, April 6, 1943. No. 3391.

VARTAN GARAPEDIAN, INC. *v.* HOWARD J. ANDERSON.

*J. Morton Rosenblum*, for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

MARBLE, J. In the absence of evidence of the New Jersey law, by which the rights of the parties are governed (*Gray* v. *Gray*, 87 N. H. 82, 83, and cases cited), the Presiding Justice was warranted in applying the law of the forum on the assumption that the common law of New Jersey is the same as that here in force. *Trafton* v. *Garnsey*, 78 N. H. 256, 257; *Saloshin* v. *Houle*, 85 N. H. 126, 134; Restatement, Conflict of Laws, s. 622.

In this jurisdiction the rule prevails that a defendant may be liable for a negligent misrepresentation which results merely in financial loss (*Weston* v. *Brown*, 82 N. H. 157) as well as for one which causes physical injury (*Cunningham* v. *Company*, 74 N. H. 435). In each case the defendant's conduct is said to be wrongful only when it contravenes some duty which the law attaches to the relation of the parties, and it is not unreasonable for the law, in recognition of comparative values, "to find a relationship and to impose a duty" (*Dillon* v. *Company*, 85 N. H. 449, 453) less readily in those cases where pecuniary loss alone results from the defendant's misrepresentation than in those cases where the negligent misstatement causes physical harm. See *Edwards* v. *Lamb*, 69 N. H. 599; Seavey, "Cardozo and the Law of Torts," 52 Harv. Law Rev. 372, 401. As in most actions for negligence, each case depends in large measure

upon its own facts, and no hard and fast line may be drawn. *International &c. Co.* v. *Railroad,* 244 N. Y. 331, 338.

The misstatements in the present instance were not made for the purpose of inducing the plaintiff to enter into any transaction in which the defendant had a financial interest. He "wasn't in the rug business" and he had no authority to purchase rugs for the Y.M.C.A. The evidence indicates unmistakably that Garapedian was not misled as to either of these facts. Indeed, Dodge's remarks on the subject made so little impression on him, or were so indefinite, that he could not recall them in detail. All his dealings were with Dodge alone, and the declaration contains no allegation that the plaintiff was led to believe that the defendant was a silent partner or otherwise interested in Dodge's affairs.

The defendant obtained nothing of value from the plaintiff, no credit was extended to Dodge on December 16, no goods were sold or consigned to him at that time, and Garapedian had some doubt about his ever returning. The statements which the defendant made to Garapedian concerning Dodge's integrity were voluntary and purely gratuitous.

Professor Bohlen finds in such representations a similarity to "the turning over to another of land or chattels for the other's use," and suggests that if the gratuitous lender of a chattel is not liable for an injury to the borrower caused by a defect in the chattel of which the lender is unaware (*Gagnon* v. *Dana,* 69 N. H. 264), no more should the individual be liable who in good faith, "either as a volunteer or by request, gratuitously gives" to another individual information concerning a business matter in which the informant has no financial interest. 42 Harv. Law Rev. 733, 741, 742.

It is unnecessary to decide whether this view can be completely reconciled with the views expressed in such cases as *Conway National Bank* v. *Pease,* 76 N. H. 319, 324, and *Benoit* v. *Perkins,* 79 N. H. 11, 13. But in each of those cases the negligent representation concerned a material fact, and whatever the rule may be in such a situation, we have no hesitancy in holding that where, as here, the representation relied on is a mere expression of opinion, given under such circumstances as those here disclosed, no duty of "preparatory care" (42 Harv. Law Rev. 733, 743) or subsequent investigation concerning its correctness devolves upon the defendant. See *Trenton Banking Co.* v. *Howard,* 187 Atl. Rep. (N. J.), 569, 574, affirmed 121 N. J. Eq. 85; *Berman* v. *Corporation,* 109 N. J. Eq. 256, 261. See also, *Lord* v. *Colley,* 6 N. H. 99, 102; *Bedell* v. *Stevens,* 28 N. H. 118, 124.

But even if such a duty were held to exist in the present case, the defendant would nevertheless be entitled to a directed verdict, since the plaintiff has failed to sustain the burden of proof on the issue of contributory negligence—a burden which it must assume, since section 13 of chapter 384 of the Revised Laws applies only to "actions on the case for personal injury or injury to personal property."

The defendant was an utter stranger to Garapedian, and he knew no more about him or about Dodge than each told him about the other. He testified, to be sure, that he believed that his secretary "asked the bank" for information concerning the defendant, but he did not state what, if any, information was obtained, nor when the inquiry was made. It does not appear that the secretary asked the bank about Dodge, and there is positive testimony to the effect that in 1939 Dodge's reputation for "honesty and dependability" was not good. Indeed, the trial court has found that at the time the misrepresentations were made Dodge "was not living within his means but was in financial difficulty, and that fact was well known throughout the community in which he lived."

Garapedian was not an illiterate Armenian unused to American business methods. On the contrary, he was a graduate of an American university of high standing and had been engaged in business for fifteen years. As the plaintiff's president and treasurer he operated a factory and maintained a sales floor in a metropolitan area. The evidence compels the conclusion that he was thoroughly familiar with credit reports and the conventional method of securing them, yet he failed "to utilize obvious means of checking up" the accuracy of the defendant's statements (42 Harv. Law Rev. 733, 740) and placed reliance on them merely because he understood from Dodge that the defendant was a "prominent citizen," the general agent of an insurance company, and a director of the Manchester Y.M.C.A., and because he was "dressed nice."

A finding that the plaintiff was free from fault contributing to its loss could not properly be made.

*Judgment for the defendant.*

All concurred.