This case was remanded by us on the former appeal to enable plaintiff to amend his petition so as to show certain facts which he claimed to have in his possession. The nature of the suit was set out in our former opinion. See 16 So.2d 132. Without again restating the allegations made in the original petition or setting out in detail the allegations made by plaintiff in his supplemental petition filed after the case was remanded, it is sufficient to say that he claims to recover from the three defendants the surtax which he was compelled to pay as his pro rata part of the surtax assessed against the S. D. Pool Realty Company by the Federal Government on account of the failure of the corporation to distribute its earnings for 1938 before the end of that year. The allegations of his petitions may be summarized as follows:
The said Pool Company was a holding corporation consisting of plaintiff and his brother, S.D. Pool, together with his three sisters, Mrs. Farrell, Mrs. D'Aquin and Mrs. Jarreau, each owning 20 per cent of the stock of the Company; the three defendants, Stephen D. Pool, Mrs. Farrell and Mrs. D'Aquin, as directors and officers of the corporation, were guilty of negligence, ineptness and deceit, and conspired to oust plaintiff and his sister, Mrs. Jarreau, and take control of the corporation for their own advantage; because of the various acts on the part of said S.D. Pool, concurred in by the other two defendants, the dividends due the said corporation by the Times Picayune Publishing Company during the year 1938, amounting to the sum of $4200, were not received and distributed during that year, by reason of which the corporation was assessed with and required to pay a surtax on its undistributed profits for that year under the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, p. 1001 et seq., which assessment was made against the stockholders after the liquidation of the corporation, and plaintiff, as a stockholder, was forced to pay his pro rata part of said tax, which amount so paid by him he now seeks to recover from the three defendants.
In their answer the defendants admit that each of the stockholders of the Pool Company was required to pay a surtax for the corporation because of the failure to distribute the earnings of the Company in 1938, but they deny that they were guilty of any negligence or wrong doing which caused this tax to be assessed against the stockholders of the Company. They allege that plaintiff was a director and secretary of the corporation in 1938, and his acts caused the Times Picayune to withhold the dividends during 1938, and the various letters written by plaintiff and by S.D. Pool *Page 132 
to the Times Picayune are referred to in the answer, as well as the letters from the Times Picayune and its attorneys giving its reason for withholding the dividends. They admit that they were directors of the corporation in January, 1939, and so advised the Times Picayune, and asked for and received the dividends due the Company in January, 1939. They allege that they employed a certified public accountant and an attorney to handle the tax matters and the legal affairs of the Company and took their advice and acted in good faith in all matters pertaining to the affairs of the corporation.
The trial judge dismissed plaintiff's suit, and he has appealed.
The acts of the defendants on which the plaintiff seeks to hold them liable for the surtax which he had to pay as a stockholder of the Pool corporation may be divided into what was done in 1938 and what was done or not done by them after they were elected directors in January, 1939.
The charter of the corporation provided for the election of a board of three directors in January of each year. At the stockholders meeting in January, 1938, at which it appears all the stockholders were present, all five of the stockholders were elected as directors, notwithstanding the charter provided for only three directors. Plaintiff was elected secretary of the corporation. Soon after this meeting, it seems that friction arose among the stockholders, particularly between plaintiff and his brother, S.D. Pool.
The domicile of the corporation was fixed in the charter at 2341 Esplanade Avenue, New Orleans, which seems to have been the home of the parents of the stockholders. Some time in the early part of 1938, Robert E. Pool suggested that the business of the corporation be transacted by him as secretary at his home in Ventress, Louisiana, but the three defendants, in a letter addressed to plaintiff on February 15, 1938, objected to the books of the corporation being carried to Ventress, and insisted that these books be kept and all business of the corporation be transacted at its domicile in New Orleans. Shortly after this controversy arose, plaintiff demanded that S.D. Pool resign as vice president and director of the corporation, which the latter refused to do.
On April 16, 1938, plaintiff, in his capacity as secretary of the S. D. Pool Realty Company, wrote the Times Picayune requesting that it send all future dividends, reports, notices, etc. to him as secretary of the corporation at Ventress, Louisiana, to which the Times Picayune replied that the domicile of the corporation was at 2341 Esplanade Avenue, New Orleans, and "under the law we are obliged to send communications to that address". On June 22, 1938, S.D. Pool, acting in his capacity as vice president and acting president, wrote the Times Picayune to ignore the request of plaintiff as secretary to have all notices, etc., sent to his address at Ventress, as his action was not authorized by the board of directors, and requested that all communications to the Company be sent to the address of its domicile. On June 30, 1938, the attorneys for the Times Picayune, to whom the matter had been referred, wrote to plaintiff that, in view of the dispute between plaintiff and his brother, the Times Picayune was advised to hold the check representing the dividend payable July 1st and not to deliver same until the matter had been settled between the parties or by judgment of court.
Matters rocked along in this unsettled state with the controversy continued and the dividend checks still held up by the Times Picayune when, on December 9, 1938, S.D. Pool, acting as vice president, sent a notice to plaintiff to be present at the annual stockholders meeting to be held at the domicile of the Company on January 3, 1939. And on December 30, 1938, S.D. Pool, as vice president, wrote the Times Picayune the letter which we quoted in our former opinion, referring to the conflicting instructions given in regard to the address to which the dividends should be sent, and requesting the Times Picayune to hold all dividend checks until further instructions after the stockholders meeting which had been called to be held on January 3rd following.
Under these circumstances, no dividend checks were sent out to the Pool Company during the year 1938.
It will be seen from what is said above that the dividend checks were not received from the Times Picayune because of the advice of its attorneys not to send out the checks until the affairs of the company had been straightened out. Mr. Nicholson, President of the Times Picayune Publishing Company, testified that it was on the advice of its attorneys that the dividends were withheld and not because of the letter *Page 133 
written by S.D. Pool on Dec. 30, 1938. The dividends would not have been received by the Pool Company in 1938 had S.D. Pool not written this letter. It was the dispute among the directors and stockholders that caused the dividends to be held up and as plaintiff was a director and secretary of the Pool Company in 1938, it was as much his duty to see that the dividends due the Company were received and distributed as it was the duty of the other directors. Plaintiff made no effort to have the controversy settled, and so far as the record shows, he was as much the cause of the unhappy condition in the Company as was any of the other stockholders.
On this second appeal, plaintiff puts considerable stress on his contention that the defendants as directors of the Pool Company after January, 1939, had until March 15th of that year in which to distribute the 1938 dividends and avoid the surtax; that they admit receiving the dividends from the Times Picayune in January, 1939, and he contends they were negligent in failing to perform their duties as directors in that they failed to distribute these dividends before March 15, 1939, as they could have done under Section 405(c) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1133, and thereby avoided the surtax levy against the corporation.
[1, 2] We do not deem it necessary to pass on the doubtful question of whether or not, under the above Section of the Revenue Act of 1938, the Pool Company could have distributed the dividends received from the Times Picayune at any time before March 15, 1939, and avoided the surtax assessment. The law on this point is very complicated and involved. The defendants as directors were only required to exercise reasonable care and diligence and act in good faith and with that judgment and discretion which ordinarily prudent men exercise under similar circumstances. They employed a certified public accountant to make the income tax returns of the Company for 1938 and also had the advice of an attorney in connection with its legal affairs. The defendants did not know that these dividends had to be distributed before March 15, 1939 (if this could have been done), in order to avoid the surtax. They had a right to rely on the advice and suggestion of the public accountant and the attorney whom they had employed to look after these legal and technical matters.
While the plaintiff claims that he knew that these dividends had to be distributed before March 15, 1939, in order to avoid the surtax, yet he admits that he never advised any of the defendants of this fact, notwithstanding he was a stockholder and had as much at stake as any of the defendants. It was to the interest of all the stockholders to avoid paying this surtax, and it is hardly conceivable that the defendants would have refused to distribute these dividends had they been advised or had known that a failure to do so would subject them as well as plaintiff to this loss.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of plaintiff.