**Charles A. NANFITO, Administrator of the Estate of Alice C. Major, Plaintiff,**

v.

**TEKSEED HYBRID COMPANY, a Nebraska Corporation, et al., Defendants.**

**Civ. No. 03507.**

United States District Court,
D. Nebraska.

March 27, 1972.

J. Patrick Green, Eisenstatt, Higgins, Kinnamon & Green, and Charles Nanfito, Nanfito & Nanfito, Omaha, Neb., for plaintiff.

Waldine H. Olson, Schmid, Ford, Mooney, Frederick & Caporale, Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

DIER, District Judge.

This matter comes before the Court following trial to the Court without a jury.

The plaintiff, Administrator of the Estate of Alice C. Major, Deceased, brings this action to recover damages for alleged fraud, deceit, undue influence and negligent misrepresentation practiced upon Alice C. Major by the defendants in connection with both a corporate merger and the execution of a stock restriction agreement, or in the alternative, for recision of the stock restriction agreement.

The defendants, on the other hand, have filed a counterclaim praying for specific performance of the stock restriction agreement.

Plaintiff alleges that his claim is cognizable under Section 10(b) and Rule 10(b)–5 of the Securities Exchange Act of 1934, and that this Court has jurisdiction of the action by virtue of 28 U. S.C. §§ 1331 and 1337. Any theory of recovery pursued by the plaintiff, based upon the law of the State of Nebraska, is alleged to be pendent to the claim for relief under Federal law.

On July 1, 1968, Tekseed Hybrid Company, a Nebraska corporation, merged with Tek Annex Company, also a Nebraska corporation. Tekseed Hybrid Company was the surviving entity. On the day of the merger Alice C. Major owned five hundred of the outstanding two thousand, five hundred shares of capital stock of Tekseed Hybrid Company. On that date, her five hundred shares were converted into three thousand, five hundred shares as a result of a stock dividend, which constituted part of the merger process. Alice C. Major had previously owned one hundred of the outstanding five hundred shares of capital stock of Tek Annex Company, but she sold these shares back to that Company approximately a year before the merger occurred.

All of the named individual defendants were, on the date of the merger, stockholders and directors of both corporations. Defendants James Cornish, Gordon Cram, and Raymond Cram were also officers of both corporations, and continued to hold their offices in Tekseed Hybrid Company following the merger.

Tekseed Hybrid Company was, at the time of the merger, and still is, an active corporation, producing and selling hybrid seedcorn and to a lesser extent alfalfa and sorghum seed. In the fiscal year, which ended June 30, 1968, immediately prior to the merger, Tekseed Hybrid had an income, before taxes, of $75,468.00. In the five fiscal years preceding the merger, Tekseed Hybrid Company had realized income, before taxes, ranging from a low of $7,773.00 to a high of $104,283.00.

Tek Annex, on the day of the merger, was essentially a dormant corporation. It had ceased doing business and all of its assets had been liquidated. The Company had produced no more than a minimal income in the years between the liquidation of its assets and its merger with Tekseed Hybrid Company.

On June 30, 1968, the day before the merger, the book value per share of Tek Annex stock was $106.02, and the book value of Tekseed Hybrid stock was $73.22 per share.

Book value per share was the only factor used by the defendants in establishing the exchange ratio of the stock for merger purposes. Each of the individual defendants testified that little weight was given to the history of earnings of the two companies, and that they did not deem it necessary to give any weight to the potential future earnings and goodwill of Tekseed Hybrid Company in setting the exchange ratio. They discounted this latter factor for various reasons, such as obsolescence of the corporation's plant and equipment; poor plant layout and location; anticipated loss of the firm's business manager; and the absence of a qualified replacement for the manager.

In establishing the exchange ratios, the individual defendants consulted with

the corporation's accountant, Mr. Gurd, a member of a national accounting firm, who had performed accounting work for the corporation for approximately twenty years. Mr. Gurd also testified that the potential earnings and goodwill of Tekseed Hybrid Company, compared with the lack of potential earnings and goodwill of Tek Annex, was a factor entitled to no weight in setting the exchange ratios. He gave substantially the same reasons for ignoring this factor as did the defendants.

On June 17, 1968, Tekseed Hybrid Company, through one of its officers, wrote a letter to Alice C. Major, in Thompson, Missouri. The letter was posted at Tekemah, Nebraska. The letter requested Alice C. Major to vote for the merger as a stockholder of Tekseed Hybrid Company. Also included was notice of a shareholder's meeting and a proxy for Mrs. Major to sign.[1]

It appears to be plaintiff's position that the individual defendants were as fiduciaries for the corporation and all its shareholders under a definite duty to fully consider all factors tending to have a bearing upon the exchange ratio for the stock for merger purposes, and then to advise all the shareholders, particularly Alice C. Major, of what factors were actually used, and the reasons for the use of those factors and the rejection of other factors. Without such information, plaintiff contends, Alice C. Major, could not make the truly informed type of investment decision which the federal securities laws, specifically Section 10(b) and Rule 10(b)–5, are intended to encourage.

However, plaintiff goes further, and would require the officers and directors of a corporation, such as the defendant herein, to not only supply investors and shareholders with full information regarding a major corporation decision affecting the value of its assets and stock, but to also interpret their information and provide an expert opinion as to all the possible ramifications such decision might have on the investor's interests.

■ This Court, however, does not read Section 10(b) or Rule 10(b)–5 as requiring any more than full disclosure of all information which the ordinary investor of common business experience would require in making an informed investment decision.

In any event, the primary aspects necessary to make plaintiff's claim cognizable under Section 10(b) are present. A merger has been held to involve a "purchase" and "sale", under the terms of the statute. Simon v. New Haven Board & Carton Co., 250 F.Supp. 297 (D.Conn. 1966); Dasho v. Susquehanna Corp., C.C.H. Fed.Sec. L.Rep. Par. 91, 955 (7th Cir. 1967), and the United States mails were obviously used in connection with the merger.

The Court, therefore, has only to determine whether the individual defendants exercised due care in establishing the exchange ratios for the stock and in advising Alice C. Major of the basis of their decision.[2]

■ The so-called "business judgment" rule validates corporate dealings and protects corporate management from liability for any transaction within the powers of the corporation, *intra vires*, and the authority of management, and involves the exercise of due care and compliance with applicable fiduciary duties. Under this rule a Court will not interfere with the internal management

---

1. Section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, governing issuance of proxy statements, is not involved in the present case since the company involved is not listed on a national securities exchange, nor does it have over $1,000,000 in assets and over 500 shareholders.

2. Any recovery due plaintiff as the result of the merger would have to accrue as a result of negligence because there is absolutely no evidence of fraud or intent to defraud in the present record.
The Eighth Circuit case of Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967) does, however, support a theory of recovery for Section 10(b) cases, based solely on negligence.

and substitute its judgment for that of the directors to enjoin or set aside the transaction or to hold the directors responsible for any resulting loss. Otis & Co. v. Pennsylvania R. R. Co., 61 F. Supp. 905 (E.D.Pa.1945), aff'd 155 F.2d 522 (3rd Cir. 1946); Conviser v. Simpson, 122 F.Supp. 205 (D.Md.1954); Diston v. Loucks, 62 N.Y.S.2d 138 (Sup.Ct. 1941); Henn, Law of Corporations, § 233 (1st Ed. 1961).

■ Directors and officers of a corporation may become liable to it or the shareholders for negligence in the performance of their corporate duties. However, they are not insurers and are not generally held liable for errors of judgment or mistakes while acting with reasonable skill and prudence.

■ The standard of care has been variously described as that of a "reasonably prudent man", or of an ordinarily prudent director in a similar business, or "the same degree of fidelity and care as an ordinarily prudent man would exercise in the management of his own affairs of like magnitude and importance." See Anderson v. Akers, 7 F.Supp. 924 (W.D.Ky.1934), modified sub nom.; Anderson v. Atherton, 302 U.S. 643, 58 S. Ct. 53, 82 L.Ed. 500 (1937); Atherton v. Anderson, 99 F.2d 883 (6th Cir. 1938); Simon v. Socony-Vacuum Oil Co., 179 Misc. 202, 38 N.Y.S.2d 270 (Sup.Ct.1942), aff'd 267 App.Div. 890, 47 N.Y.S.2d 589 (1st Dept. 1944); Strauss v. United States Fidelity & Guaranty Co., 63 F.2d 174 (4th Cir. 1933).

■ Directors and officers must act carefully in light of the circumstances which confront them, in light of actual knowledge,. and such knowledge as they should have gained by reasonable care and skill.[3]

This Court is of the opinion that the individual defendants used all due care in establishing the exchange ratios of the stock for merger purposes. They, in testifying, explained to this Court's satisfaction why future earnings potential and goodwill of the two corporations were not significant factors in setting the ratios. There is also evidence that they relied upon the advice and judgment of their accountant, a member of the accounting firm of Peat, Marwick, Mitchell & Co., in setting the ratios. Reasonable reliance on others has been found by some Courts to be consistent with the duty of due care imposed upon corporate management. See Pool v. Pool, 22 So.2d 131 (La.App.1945); Winkelman v. General Motors Corp., 39 F. Supp. 826, 44 F.Supp. 960, 48 F.Supp. 500, 48 F.Supp. 504 (S.D.N.Y.1942) aff'd per curiam sub nom. Singer v. General Motors Corp., 136 F.2d 905 (2nd Cir. 1943); Epstein v. Schenck, 35 N.Y. S.2d 969 (Sup.Ct.1939); Spirt v. Bechtel, 232 F.2d 241 (2nd Cir. 1956).

However, even though the individual defendants exercised all due care in carrying out the merger pursuant to, and in compliance with, statutory and other legal requisites, they must also have provided Alice Major with information which would have enabled her to determine how her interests in the corporation might be altered.

In this latter regard, it must be noted that Alford Major, the husband and Alice C. Major, who predeceased her, was one of the founders of Tekseed Hybrid Company and had been active in its management until the time of his death in 1960. He was undoubtedly quite familiar with the corporation's problems and expectations.

It is at least inferable from this that Alice C. Major acquired from her hus-

---

3. Although the Court does not need to decide the question, defendants have raised the issue of contributory negligence. It is of academic interest to note that some cases which have recognized negligent misrepresentation as a cause of action have also recognized the defense of contributory negligence. Gould v. Flato, 170 Misc. 378, 10 N.Y.S.2d 361 (1939); Vartan Garapedian, Inc. v. Anderson, 92 N.H. 390, 31 A.2d 371 (1943); Maxwell Ice Co. v. Brackett, Shaw and Lunt Co., 80 N.H. 236, 116 A. 34 (1921).

band information about the condition and outlook of the company.

In addition, the evidence established that Alice C. Major kept herself relatively well informed about the management of the corporation. She attended shareholders' meetings and was about as active as a minority shareholder in a close corporation can be, for eight years prior to the merger. Since a Subchapter S corporation was involved, she was, of course, quite familiar with the earnings Tekseed Hybrid Company had experienced.

Alice C. Major had also been a stockholder of Tek Annex, having sold her interest of Tek Annex approximately one year before the merger. She was thus aware of the fact that it was a dormant corporation.

By letter of May 21, 1968, Alice C. Major was advised by Raymond Cram, then secretary of Tekseed Hybrid Company, that the management had discussed the financing of worn out facilities and additional facilities for Tekseed Hybrid Company, and had concluded that the most practical solution would be the merger of Tek Annex Company with Tekseed Hybrid Company. Along with the letter was a proposed plan of merger, a notice of a stockholders' meeting, and a proxy for Mrs. Major to sign.

Plaintiff's primary complaint as to the merger seems to be that 1) the defendants were negligent in failing to value Tekseed Hybrid Company stock on a basis higher than book value because that company was a going concern, and had established goodwill while Tek Annex Company was an inoperative firm, and 2) the defendants failed to tell Alice C. Major of these facts. The Court has already concluded that the evidence fails to establish negligence on the part of the defendants in setting the exchange ratio, and the Court now concludes that Alice C. Major already knew that Tekseed was a going concern with good will while Tek Annex was not such a firm. Since Mrs. Major was already aware of the factors which plaintiff deems so important, it would have been a useless gesture for the defendants to advise her thereof.

Thus, all that remained for the defendants to inform Alice C. Major about were the reasons for the merger. This the defendants did. They could not, in this Court's view, be required to go further and analyze the facts for Mrs. Major. Had they done so, they would have been walking on dangerous grounds, because once they assumed the duty to do so, they might possibly have become liable if their analysis had proven incorrect. In short, Alice C. Major, was as free to draw her own conclusions about the propriety of the merger and its ramifications on her interests, once she had been fully apprised of the reasons for the merger and the condition of each corporation.[4]

It is, therefore, the opinion of this Court that the defendants herein neither committed an act nor omitted to do an act in regard to the merger, such as would justify a recovery by the plaintiff under Section 10(b) of the Securities Exchange Act of 1934 or any other law, state or federal.

In addition to plaintiff's claim for relief from the results of the merger, he also claims that a certain stock restriction, which was signed by Alice C. Major, should be rescinded because it was obtained by undue influence.

The stock restriction, dated January 11, 1969, was signed by all shareholders of Tekseed Hybrid Company and provides that no shareholder shall, during his lifetime, transfer or otherwise encumber or dispose of his stock interest without first offering to sell all of such

---

4. Had Alice C. Major retained her interest in Tek Annex, it is obvious that she would have stood in precisely the same shoes as all of the other shareholders as far as the effects of the merger are concerned. It is also somewhat worthy of note that Alice C. Major did not exercise her appraisal rights under Nebraska law from the time of the merger on July 1, 1968, until her death, January 22, 1970.

interest to the Company at the price set in the agreement, i.e., $12.50 per share. If the Company did not purchase the stock within ninety (90) days of the offer to sell, the stock must then be offered at the same price to the other shareholders, each of whom has the right to buy such portion of the stock as the number of shares owned by him bears to the total number of shares owned by all the shareholders. If a shareholder did not buy his proportionate share, such share could be bought by the other shareholders equally. If neither the company not the shareholders buy the stock within one hundred twenty days (120) of an offer of sale, it can be sold to any person.

The agreement also provided that upon the death of any shareholder, the company shall buy and the estate of the decedent shall sell all of the decedent's shares, at the price shown in the agreement, i.e., $12.50 per share, which was the then book value of the stock.

Plaintiff contends first that the price contained in this agreement at which each shareholder's estate was bound to sell his stock to the company, was a price negligently arrived at by the defendants. Plaintiff further contends that even if there was no intent on the part of the defendants to arrive at an unfair price, plaintiff may still recover on the grounds of innocent misrepresentation or undue influence.

Plaintiff's counsel in his post-trial brief argues that Mrs. Major was entitled to rely upon the defendants' opinion as to the value of the stock since they were fiduciaries as to her, and that because their representations were negligently arrived at, recision should be granted.

■ The Court agrees that the defendants were fiduciaries as to Alice C. Major, and that she was entitled to rely upon their representations of value. The Court also agrees that, if the defendants' opinion of value was negligently arrived at, recision is proper. See Jacquith v. Mason, 99 Neb. 509, 156 N.W. 1041 (1916); Carruth v. Harris, 41 Neb. 789, 60 N.W. 106 (1894); Woods-Faulkner and Co. v. Michelson, 63 F.2d 569 (8th Cir. 1933).

■ However, this Court does not agree with plaintiff's presupposition that the defendants were negligent. In the Court's opinion, the actions of the defendants in setting the value of stock, in the stock purchase agreement, were fully consistent with the business judgment rule as heretofore discussed. The testimony of the defendants regarding the setting of price, reflects the same considerations as entered into the setting of the exchange ratios for the merger, i.e., the tremendous competitiveness of the seed corn business; the expected loss of their plant manager; the poor plant layout and location; and, the obsolescence of their facilities. Again, the defendants relied upon expert accounting advice in setting the stock value.[5]

The Court, therefore, finds no basis for rescinding the agreement under an innocent misrepresentation theory.

5. It should also be noted that Alice C. Major was not the only one who bound herself to the terms of the stock restriction. The defendants themselves were as much bound by it as was Mrs. Major. In addition, it should be noted that stock transfer restrictions are not unusual in a small close corporation. In fact they are extremely valuable, where a corporation is desirous of maintaining a Sub-chapter S status, as in the present case.

Stock transfer restrictions serve two primary purposes in the close corporation: (1) Securing the *delectus personal*; and (2) preservation of the management structure. The purposes of preventing outsiders from obtaining ownership in the corporation and of maintaining the proportionate interests of shareholders are ordinarily recognized as proper. See e. g., Longyear v. Hardman, 219 Mass. 405, 106 N.E. 1012 (1914). Since stock in a close corporation is rarely traded, much less listed on a stock exchange, its value is usually difficult to determine, and there is, as a practical matter, very little market for such stock.

Plaintiff also contends that the stock purchase agreement should be rescinded on the basis of undue influence.

Plaintiff relies upon the testimony of Ralph Anderson, who apparently was attorney for both Alice C. Major and Tekseed Hybrid Company, and advised both parties regarding the stock purchase agreement,[6] and the correspondence of Mrs. Major introduced in evidence demonstrating that prior to the visit of the defendants with her, she had intended to refuse to sign the stock restriction, because of her desire to leave her Tekseed stock to her son, Alford. See Exhibits 3 and 8.

In mid-January of 1969, one of the individual defendants, James Cornish, called Alice Major on the telephone and arranged for a meeting with her at her home in Thompson Missouri. Subsequently, the defendants, James Cornish, William Breckenridge and Gordon Cram, traveled from Tekamah, Nebraska, to Thompson, Missouri, and met with Alice C. Major, on January 13, 1969. The three defendants testified that the purpose of the meeting was to persuade Alice C. Major to sign the stock restriction.

Alice C. Major was in fact persuaded to sign the stock restriction. Marjorie Miller, Mrs. Major's daughter, was present for part of the meeting, and testified that the defendants told Mrs. Major what the price for the stock would be, and that it was a fair price because the company might be worthless within a year. Mrs. Miller also testified that the men told her mother that even if she didn't sign the agreement, the other shareholders could impose it on her anyway. The defendants, on the other hand, categorically denied ever having made this latter statement. The Court is inclined to believe the testimony of defendants on this point.

On January 15, 1969, two days after the visit, Alice C. Major wrote Anderson stating that she had discussed the stock restriction with her daughter and son-in-law, and had been told that she could not leave the stock to Alford because of the stock restriction. She stated that she didn't think she "had read it that way", because she "asked the 3 men if it was o. k. to will it to Alford Jr. and they said yes—'to one—was o. k.' "

Plaintiff argues that it can be inferred from Mrs. Major's letters before and after her meeting with the three aforesaid defendants that undue influence was practiced upon her by said defendants because the stock restriction was completely contrary to her intentions. Plaintiff also places weight upon the fact that the three defendants who visited Mrs. Major testified that they intended to "persuade" her to sign the stock restriction.

The Court has some difficulty in concluding that Mrs. Major was the type of woman who could be easily persuaded or even "conned" into doing something which she did not wish to do. The evidence tends to establish that she was an independent woman, rather strong willed, and quite competent.

In most cases wherein undue influence has been established, there is evidence that the party seeking relief was a person of weak understanding, lacking in experience or business ability, or is under some physical or mental disability. Meyer v. Fishburn, 65 Neb. 626, 91 N. W. 534 (1902); Miller v. W. C. Wentz Co., 99 Neb. 286, 156 N.W. 634 (1916); Carson v. Greeley, 107 Neb. 609, 187 N. W. 47 (1922); Stieber v. Vanderlip, 136 Neb. 862, 287 N.W. 773 (1939). Alice C. Major was simply not such a person.

Plaintiff also uses the word "persuade" as if it has some inherently evil connotation. This Court, however, finds that mere persuasion without more is quite permissible. See Stump v. Sturm, 254 F. 535, 538 (4th Cir.). What the law prohibits is the use of cunning or artifice to subvert a person's will. Shroeder v. Ely, 161 Neb. 252, 73 N.W.2d 165 (1955). The Court finds no evidence in

---

6. The Court frowns upon the chameleon-like practice of law exhibited by Mr. Anderson.

this record of such cunning or artifice on the part of defendants herein.

The Court is also impressed by the fact that the letter from Alice C. Major to Ralph Anderson, dated January 15, 1969, indicates that she read the stock restriction, but claims she may have misunderstood its terms. It is, of course, true that the Nebraska Supreme Court has on a few occasions held that one who signs a contract or agreement may not necessarily be bound thereby. See Ward v. Spelts & Klorterman, 39 Neb. 809, 58 N.W. 426 (1894); Cole & Hart v. Williams, 12 Neb. 440, 11 N.W. 875 (1882); Story v. Gammell, 68 Neb. 709, 94 N.W. 982 (1903). But, that Court also said in Todd Brothers v. Federal Crop Insurance Corp., 178 Neb. 211, 132 N.W.2d 778 (1965), as follows:

"It would be a dangerous innovation of contract law to hold that one is not bound by what he signs, and that that which he fails to read or understand should be read out of contracts."
178 Neb. at 215, 132 N.W. at 781.

The language of the stock restriction is quite clear, and if Mrs. Major read it, as she said in her letter she did, she, being a competent woman capable of understanding plain English, should have understood its purport.

The mere fact that Mrs. Major was later remiss at having signed the document is no basis for recision, nor is this Court influenced by the fact that her children were not happy with what she did. This Court will not, therefore, grant recision.

Finally, defendants have filed a counterclaim against the plaintiff asking for specific performance of the aforementioned stock restriction agreement. Defendants allege that, pursuant to the terms of the agreement, Tekseed Hybrid Company did, on April 2, 1970, make a formal tender of and deliver to the plaintiff at his offices in Omaha, Nebraska, the sum of $43,750.00 in cash and demanded of the plaintiff that he take any and all steps necessary to transfer the decedent's thirty-five hundred shares of capital stock to Tekseed Hybrid Company, including the endorsing of said shares of stock to it.

It is further alleged that plaintiff refused to accept the cash and refused to endorse and deliver the stock to Tekseed Hybrid Company.

Thereafter, Tekseed Hybrid Company deposited the aforesaid sum of money in a demand account at the Southwest Bank of Omaha, holding said sum available for immediate delivery to the Estate of Alice C. Major, Deceased, upon the demand of the plaintiff herein and the delivery by him of the shares of stock to the company, properly endorsed. The plaintiff was advised of the opening and continuing existence of said account.

The weight of American authority is that contracts for the sale and purchase of stock having no recognized market value, or which is not readily procurable except from the vendor under the contract, will be specifically enforced. Pomeroy, Specific Performance of Contracts, Paragraph 19 (3rd Ed.); Hirschman v. Casey, 121 Neb. 471, 237 N.W. 584 (1931); See also Electric Management & Engineering Corp. v. United Power & Light Corp., 19 F.2d 311 (8th Cir. 1927). The case would appear to fall within the general rule as stated. The Court is, therefore, of the opinion that the defendants are entitled to judgment in their favor on their counterclaim.

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[7]

---

7. The Court commends counsel for both parties in this matter. They represent the ultimate in professional competency, and their briefs and arguments have been most informative and very helpful to this Court in resolving the legal issues presented.